## Seeger *versus* Pettit.

1. In determining what are removable fixtures the criterion is the intention to annex, not the character of the physical annexation to the realty.

2. Where the tenant puts in fixtures or conveniences for his own comfort, it is not presumed that he intended them as permanent improvements, to be left for the landlord; as a general rule the tenant may remove them during the term.

3. For injury to the freehold in removing fixtures the tenant is liable to the landlord in damages.

4. Defendant and another, who was agent of the plaintiff, composed a firm

who rented from plaintiff; the firm was dissolved, the defendant continuing in possession as tenant. In an action against him by the plaintiff for removing fixtures put up by the firm, it was competent to show that on the dissolution, the partners treated the fixtures as personal property, and they were paid for by the plaintiff to his partner.

5. Hill *v.* Sewald, 3 P. F. Smith 271, adopted; Pyle *v.* Pennock, 2 W. & S. 390; Voorhis *v.* Freeman, Id. 116, recognised.

February 16th 1875. Before Agnew, C. J., Sharswood, Williams, Mercur, Gordon, Paxson and Woodward, JJ.

Error to the District Court of *Philadelphia:* Of July Term 1873, No. 6.

This was an action on the case, commenced January 16th 1872, by Ann Pettit against Rowland Sceger.

The complaint of the plaintiff was that the defendant, being her tenant of premises No. 45 North Front street, Philadelphia, removed from there a coal-bin, gas fixtures, walnut railing, walnut stairs and bannisters, closet, walnut shelves and platform scales. The defence was, that the articles removed had been put into the premises by the tenant during the tenancy, for his own convenience and use.

The case was tried February 17th 1873.

The evidence was that the defendant, with one John Pettit, had rented the premises in 1864 from one Bonnafon, and occupied them as partners in the business of selling drugs, &c. The partnership continued two years; during that time the gas fixtures, platform scales and railing were put in. After the dissolution, John Pettit continued business alone. In July 1867, John Pettit purchased the property, and in December of the same year, sold it to the plaintiff, his mother. In 1868 John Pettit again entered into partnership with the defendant, and the firm continued as tenants of the same premises. John Pettit representing his mother in renting them; he always represented her as to the premises up to 1872; the rent was paid to him and he accounted to her for it. The walnut staircase and railing were put in by the last partnership in 1870. The firm was dissolved in January 1871, the defendant having bought the interest of John Pettit.

The plaintiff gave evidence that the staircase was a permanent one; built into the house like any other stairway; the floor had been cut out for the staircase and a temporary trimmer for support put in. After the removal of the staircase, the screw-holes were there; the shelves were fastened to the partition.

John Pettit, for plaintiff, testified that the scales, stairway railing and gas fixtures, had been put in by Seeger and himself as a firm, and when the property belonged to the plaintiff; the bin had been put in when he was there alone; the shelving was put in by the last firm; after the dissolution the defendant retained possession of the premises.

On cross-examination, the defendant offered to ask witness,

[Seeger *v.* Pettit.]

" Were not these articles included in the inventory and appraisement of the property of the first firm on its dissolution ?"

The question was objected to by the plaintiff, rejected by the court and a bill of exceptions sealed.

There was evidence also that the removal of the stairway tended to weaken the building; that the stairway was a support.

The plaintiff having closed, it was proposed to ask defendant, " When the firm was dissolved in January 1871, were these fixtures included in the assets for which you paid Mr Pettit ?" The question was objected to by the plaintiff, rejected by the court and a bill of exceptions sealed.

The defendant gave evidence for the purpose of showing that the fixtures had been put up for convenience of the tenants, and were but slightly and temporarily attached to the building.

The court (Thayer, J.) charged :

" [The general rule applicable to the subject is that the tenant, if he has affixed anything to the freehold, during the term, cannot remove it without the consent of the landlord. To this rule, however, there are many exceptions.] The tenant has a right to remove trade fixtures which he has set up—that is, fixtures set up for the purpose of carrying on his trade advantageously. This is on account of the encouragement afforded to trade by public policy. So also may ornamental fixtures and fixtures put up for convenience, and only slightly attached to the freehold, and such as may be removed without any serious injury, be removed. The gas fixtures mentioned in this case fall under this description. The tenant, if he put them in, had a right to remove them. [Where the utensil or thing attached is an accessory to the carrying on of a trade, it is to be considered a chattel which may be removed—a trade fixture. Where it is a necessary accessory to the enjoyment of the inheritance, it becomes a part of the inheritance or freehold, even though it may incidentally conduce to the convenience of the tenant in carrying on his trade.]

Now, to apply these principles to the things removed by the tenant, in this case :—

[First. As to the stairway :—If that was affixed to the freehold in the manner described by the witnesses, being fastened to the floor and wall and a hole cut through the joists and floor of the second story, to admit access from it, then the defendant had no right to remove it, and is responsible for doing so.] * * *

[Fourth. As to the coal bin :—If that was fastened to the freehold in a permanent manner, I do not see how it could be removed on the ground of its being a trade fixture; because a coal bin is not only useful in a house where a trade is carried on, but is useful, no matter for what purpose the house may be occupied. Wherever fires are used and coal is used, coal bins are useful.]

[Fifth. As to closets and shelves :—I do not see how they can

be fairly regarded as trade fixtures, if they are built on the wall and permanently fastened, so that they cannot be removed without injury to the freehold.   If they were let into the wall and securely fastened to the building, the tenant could not remove them.] * * *

The verdict was for the plaintiff for $300.

The defendant took a writ of error; he assigned for error:

1, 2.  The rulings on question of evidence.

3–7.  The portions of the charge in brackets.

*C. S. Pancoast,* for plaintiff in error.—The right of the tenant to remove fixtures depends neither on the nature of their annexation to the freehold nor upon their being purely for the purposes of trade; but the right of removal embraces such as are for ornament, pleasure, convenience, &c.: Elwes *v.* Maul, 3 East 38; 2 Sm. Lead. Cas. 114, notes by H. & W. 167 (42 Law Lib.); Bishop *v.* Elliott, 11 H. & G. 122; Hill *v.* Sewald, 3 P. F. Smith 272; Voorhis *v.* Freeman, 2 W. & S. 116; Meigs' Appeal, 12 P. F. Smith 28.

*R. P. White,* for defendant in error.—To authorize the tenant to remove a fixture, it must be capable of removal, without destruction or serious injury to the freehold: Taylor's Landlord and Tenant Act, sect. 547 (notes) 550.

Mr. Justice PAXSON delivered the opinion of the court, February 23d 1875.

There are several specifications of error in this case, all of which we think are sustained.   The evidence referred to in the first and second specifications was competent to show that the tenants treated the fixtures as personal property.   John Pettit was a son of the plaintiff below, and acted for her in renting the property, collecting the rent, &c.   During a portion of the time he was in partnership with Mr. Seeger.   It was clearly competent to prove, upon the question of intention, that the firm treated the fixtures as their own property, and included them among their assets.

The remaining specifications of error refer to the charge of the court, and may be considered together.   Under the earlier decisions physical annexation was undoubtedly the test.   But this doctrine no longer prevails.   It was overturned in Voorhis *v.* Freeman, 2 W. & S. 116, followed by Pyle *v.* Pennock, Id. 390; and numerous other cases which will be found collected in Hill *v.* Sewald, 3 P. F. Smith 271.   The true rule to be deduced from these authorities is, that it is not the character of the physical connection with the realty which constitutes the criterion of annexation, but it is the intention to annex.   Where a tenant puts in fixtures or conveniences for his own comfort, the law raises no presumption that he intended them as permanent improvements,

[Seeger *v.* Pettit.]

to be left for the benefit of his landlord; and as a general rule he will be entitled to remove them during his term. For any injury to the freehold by reason of such removal, he is of course liable to the landlord in damages.

The matter of fixtures should have been left to the jury as a question of intention. Instead of doing so, the learned judge applied the law to certain facts of the case, and instructed the jury substantially that, if there was physical annexation, the articles could not be removed. This was error.

Judgment reversed, and a *venire facias de novo* awarded.