596 A.2d 1161

John B. WILSON and Linda L. Wilson, as parents and natural guardians of Jason P. Wilson, a minor, and John B. Wilson and Linda L. Wilson, in their own right, and Jason P. Wilson, in his own right, Appellants,

v.

RIDGWAY AREA SCHOOL DISTRICT, a Political Subdivision of the Commonwealth of Pennsylvania and Rockwell Manufacturing Company, Appellees.

John B. WILSON and Linda Wilson, as parents and natural guardians of Jason P. Wilson, a minor, and John B. Wilson and Linda Wilson, in their own right, and Jason P. Wilson, in his right

v.

RIDGWAY AREA SCHOOL DISTRICT, a political subdivision of the Commonwealth of Pennsylvania, et al.

Appeal of ROCKWELL INTERNATIONAL CORPORATION, t/d/b/a Rockwell Manufacturing Company.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 29, 1991.

Decided Aug. 8, 1991.

608

John Daley, for appellants, John B. Wilson et al.

Daniel P. McDyer, for appellant/appellee, Rockwell Intern. Mfg. Corp.

Clem C. Trischler, for appellee, Ridgway Area School Dist.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

PALLADINO, Judge.

John B. Wilson, Linda L. Wilson and Jason P. Wilson (Jason) (collectively, Wilsons) [1] and Rockwell International Corporation t/d/b/a/ Rockwell Manufacturing Company (Rockwell) [2] appeal an order of the Court of Common Pleas of the Fifty–Ninth Judicial District, which granted the motion for summary judgment of Ridgway Area School District (District) in a personal injury action.

While operating a table saw (saw) located in the wood shop of a District high school, Jason severely lacerated his right hand, severing his right index and middle fingers. Wilsons filed a complaint against District alleging that District had exclusive care, custody and control of the saw, [3] that the saw was placed in the wood shop by District intending it to be a permanent improvement, [4] that the saw was an integral part of the real estate and essential to the conduct of the wood shop class, [5] and that District maintained the saw in a defective condition because it lacked a guard enclosing the cutting blade. [6] Wilsons requested damages for both Jason and themselves. [7]

District filed an answer and new matter, raising the affirmative defenses of contributory negligence, assumption of risk, and governmental immunity. [8] Wilsons replied

1. John B. Wilson and Linda L. Wilson are the natural parents of Jason. John and Linda Wilson commenced this action on their own behalf and on the behalf of Jason when he was a minor. When Jason attained majority, he was added as a party in his own right.

2. Rockwell is a defendant in this action.

3. Wilsons' Complaint filed August 19, 1988 at 3, paragraph 9.

4. *Id.* at 3, paragraph 10.

5. *Id.*

6. *Id.* at 4, paragraph 16.

7. District filed preliminary objections to the complaint in the nature of a motion to strike allegations that District had failed to adequately supervise or instruct Jason in the use of the saw. District contended that these allegations should be stricken because the failure to supervise or instruct does not fall within any of the exceptions to governmental immunity set forth at 42 Pa.C.S. §§ 8541–8542. The trial court sustained these objections.

8. 42 Pa.C.S. § 8541.

to District's new matter, denying the allegation of Jason's negligence and assumption of risk. Wilsons also asserted that the complaint fell within the real property exception to governmental immunity.

District filed a praecipe for writ to join Rockwell as an additional defendant. Following some initial discovery, upon leave of court, Wilsons amended their complaint adding Rockwell as an additional defendant. The amendment added two claims against Rockwell based on negligence and strict liability.

Thereafter, Rockwell filed an answer and new matter, raising the defenses of contributory negligence, assumption of risk, and statute of limitations. Wilsons responded asserting that Jason had acted in a reasonable, prudent and non-negligent manner and that the action was brought within the period of the applicable statute of limitation.[9]

Thereafter, District filed a motion for summary judgment contending that as a matter of law it was immune from suit under 42 Pa.C.S. § 8541 and that Wilsons' action did not fall within one of the enumerated exceptions of 42 Pa.C.S. § 8542. In this motion, District also asserted that it was immune based on *Crowell v. City of Philadelphia*, 131 Pa.Commonwealth Ct. 418, 570 A.2d 626 (1990).[10] Wilsons filed a response to this motion contending that its action falls within the real estate exception to immunity because the saw was part of the realty. Wilsons also contended that *Crowell* did not control.

Thereafter, both District and Rockwell petitioned the trial court for leave to amend their respective answers and new matters to add the defense that the action was time barred

9. Pursuant to Pa.R.C.P. No. 2252(d), District filed an answer to the amended complaint and new matter incorporating its prior defenses and asserting that Rockwell alone was liable to Wilsons or liable over to District in the event District was found liable.

10. *Crowell* was reversed in part by *Buschman v. Druck*, 139 Pa.Commonwealth Ct. 182, 590 A.2d 53 (1991).

by the statute of repose.[11]  Rockwell also filed a motion for summary judgment, and District filed a supplemental motion for summary judgment adding a defense under the statute of repose.  The trial court heard argument on the petitions for leave to amend and on the motions for summary judgment and issued one opinion and order as to District and one as to Rockwell.  Only the decision as to the District will be addressed in this opinion.[12]

The trial court concluded that District was not entitled to summary judgment based on *Crowell*.  The trial court identified the next issue as whether the alleged defect in the saw fell within the real property exception to immunity. 42 Pa.C.S. § 8542(b)(3).  Specifically, the trial court crystalized the issue as whether the saw was realty or personalty. The trial court concluded the saw was personalty and held that Wilsons failed to state a claim within the real property exception to immunity and granted summary judgment. Having granted summary judgment on this basis, the trial court chose not to rule on District's petition to amend its answer and new matter.  Wilsons and Rockwell separately appealed this decision to this court, which consolidated the appeals.

On appeal,[13] Wilsons and Rockwell raise the following issues: (1) whether District's intent to treat the saw as a fixture or personalty presented a question of law or a

**11.**  42 Pa.C.S. § 5536.  This section generally requires that an action based on the deficient design or construction of an improvement must be commenced within 12 years after completion of the improvement.

**12.**  As to Rockwell, the trial court granted its motion to amend and denied its motion for summary judgment.  Rockwell appealed by permission of this court.  Rockwell's appeal from this decision is considered in a separate opinion at *Wilson v. Ridgway Area School District, Rockwell International Corporation*, 141 Pa.Commonwealth Ct. 617, 596 A.2d 1166 (1991).

**13.**  When reviewing an order granting summary judgment, our scope of review is limited to a determination of whether the trial court committed an error of law or an abuse of discretion.  *Johnson v. Woodland Hills School District*, 135 Pa.Commonwealth Ct. 43, 582 A.2d 395 (1990).  Summary judgment is only appropriate when, after examining the record in favor of the nonmoving party, there is no genuine issue of material fact and the movant clearly establishes its entitlement to judgment as a matter of law.  *Id.*

disputed question of fact; (2) whether the trial court incorrectly applied the *Canon–McMillan* [14] distinction between realty and personalty; and (3) whether the "Assembled Industrial Plan Doctrine" should have been used to decide whether the saw was personalty or realty.

■ As to the first issue, Wilsons seek to limit the holding of *Canon–McMillan III.* In *Canon–McMillan III,* we decided, as a matter of law, that a lathe in a high school wood shop was personalty, not realty. Wilsons assert that in *Canon–McMillan III* there was no evidence that Canon–McMillan intended the lathe to be realty, and consequently only a legal burden of proof issue was present. Wilsons argue that *Canon–McMillan III* does not stand for the proposition that intent is a question of law.

We note, as did the trial court, the similarities of this case to *Canon–McMillan III.* Both cases involve an accident involving a wood working machine in a high school wood shop. Both machines had substantial weight and neither was attached to the floor. Both machines were only physically connected to the real estate by their electric cords. Both machines were occasionally moved for cleaning purposes.

Our decision in *Canon–McMillan III,* like the present case, required consideration of whether a machine was realty or personalty. We stated the well-established test:

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty.... Second, those which are

**14.** Our decision in *Canon–McMillan School District v. Bioni,* 110 Pa.Commonwealth Ct. 584, 533 A.2d 179 (1984) (*Canon–McMillan I*), was appealed to the supreme court and remanded. *Canon–McMillan School District v. Bioni,* 521 Pa. 299, 555 A.2d 901 (1989) (*Canon–McMillan II*). On remand, this court decided that a lathe located in a high school was personalty and did not fall within the real property exception to governmental immunity. *Canon–McMillan School District v. Bioni,* 127 Pa.Commonwealth Ct. 317, 561 A.2d 853 (1989) (*Canon–McMillan III*).

so annexed to the property, that they cannot be removed without material injury to the real estate or to themselves; these are realty.... Third, those which although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending on the intention of the parties at the time of annexation.... *Canon–McMillan III*, 127 Pa.Commonwealth Ct. at 320–321, 561 A.2d at 854 (quoting *Clayton v. Lienhard*, 312 Pa. 433, 436–37, 167 A. 321, 322 (1933)).

We concluded that the machine in *Canon–McMillan III* fell within the third class. We then considered Canon–McMillan's manifest conduct [15] as to the use of the lathe and held that as a matter of law the lathe was personalty. We reiterate for the purpose of clarity, that when property falls within the third class described in *Clayton*, the question of whether property is realty or personalty, is a question of law to be based on the facts as to the property owner's manifest conduct.

■ As to the second issue, Wilsons and Rockwell assert that this case is distinguishable from *Canon–McMillan III*, because of additional evidence which they argue is relevant to District's intent. This additional evidence is a 1959 blue print of the high school which shows the present site of the saw; and an admission that the saw was never removed from the wood shop. The lathe in *Canon–McMillan III* had been moved at least once.

The trial court considered these additional facts and concluded that they did not provide a basis to distinguish *Canon–McMillan III* as a matter of law. We agree that these additional facts have little to do with the intended

---

15. In determining intent, " 'it is not so much what a particular party intended his legal rights to be, as it is *what intended use of the property was manifested by the conduct of the party.*' " *McCloskey v. Abington School District*, 101 Pa.Commonwealth Ct. 110, 114, 515 A.2d 642, 644 (1986) (quoting Clothier, *The Law of Fixtures in Pennsylvania*, 32 Pa.B.Q. 66, 66–67 (1960–61) (emphasis added)).

character of the property. As to the blue print, plans to place personal property on real estate can be made despite a separate plan to eventually remove the property. This second intention is more relevant to the personalty—realty question. Additionally, the non-movement of property is not manifest conduct of a property owner and speaks very tenuously, if at all, to any intent as to the nature of the property. We hold that based on the undisputed facts concerning District's manifest conduct, the trial court correctly concluded that the saw was personalty.

■ As to the third issue, Wilsons contend that the saw is a fixture under the Assembled Industrial Plant Doctrine. Generally, this doctrine is applied in condemnation, mortgage and taxation cases and provides "that machinery and equipment necessary for the operation of a plant and placed therein become fixtures, whether or not they are attached to the realty." *Redevelopment Authority of the City of Johnstown v. Yee Kai Teung*, 5 Pa.Commonwealth Ct. 65, 69, 289 A.2d 498, 501 (1972). The doctrine is applied to determine what machinery and equipment will be included as part of the real estate for valuation purposes. The issue of valuation and its underlying considerations are completely foreign to the present decision of when the general assembly intends to subject political subdivisions to tort liability. We hold that this doctrine is not applicable to the present case.

Accordingly, we affirm.

## ORDER

AND NOW, August 8, 1991, the order of the Court of Common Pleas of the Fifty–Ninth Judicial District in the above-captioned matter is affirmed.

DOYLE, Judge, dissenting.

The more essential issue in this case is not, as I view it, whether the table saw is classified as "personalty" or

"realty," but rather, who will determine the facts upon which that legal conclusion will be drawn.

The majority articulates the principle that "when property falls within the third class described in *Clayton*,[1] the question of whether property is realty or personalty, is a question of law to be based on the facts as to the property owner's manifest conduct," which is, in other words, a problem of deciphering the intent of the parties. But, as regards to the question of who should make that determination, the majority would hold, in stating that it is a "question of law" and by following the *Canon–McMillan* trilogy [2] in a rather blind manner, that the decision must always rest with the trial court, eschewing entirely the role of a jury to determine either the underlying absolute facts or the factual conclusions to be drawn therefrom.

I dissented in both *Canon–McMillan I* and *Canon–McMillan III* and cannot believe that the Supreme Court in *Canon–McMillan II* in a cursory two-sentence, one-paragraph, per curiam opinion meant to determine that the legal conclusion here at issue is forever to be reached on the facts as found by the court, eviscerating entirely and forever the jury's fact-finding role. Indeed, several of the case law predicates upon which the tripartite classifications were made in *Clayton* were appellate review of determinations made by juries.

In *Seeger v. Pettit*, 77 Pa. 437 (1875), a case involving a landlord's attempt to recover damages for the tenant's removal of gas fixtures, walnut stairs and bannisters, walnut shelves and a "coal bin," among other fixtures that the tenant had installed for his business, the trial court had charged the jury that the gas fixtures, since they were "only slightly attached to the freehold, and such as may be removed without any serious injury," may be removed by

1. *Clayton v. Lienhard*, 312 Pa. 433, 167 A. 321 (1933).
2. *Canon–McMillan School District v. Bioni*, 110 Pa.Commonwealth Ct. 584, 533 A.2d 179 (1987) (*Canon–McMillan I*); *Bioni v. Canon–McMillan School District*, 521 Pa. 299, 555 A.2d 901 (1989) (*Canon–McMillan II*); *Canon–McMillan School District v. Bioni*, 127 Pa.Commonwealth Ct. 317, 561 A.2d 853 (1989) (*Canon–McMillan III*).

the tenant as of right; but as to the other fixtures, if they were "affixed to the freehold in the manner described by the witnesses," those were not trade fixtures, being permanently fastened so that they could not be removed without injury to the freehold, and the tenant could not remove them. The Supreme Court, in reversing, held:

> Under the earlier decisions physical annexation was undoubtedly the test. But this doctrine no longer prevails. It was overturned in Voorhis v. Freeman, 2 W. & S. 116, followed by Pyle v. Pennock, Id. 390; and numerous other cases which will be found collected in Hill v. Sewald, 3 P.F. Smith 271. The true role to be deduced from these authorities is, that it is not the character of the physical connection with the realty which constitutes the criterion of annexation, but it is the intention to annex. Where a tenant puts in fixtures or conveniences for his own comfort, the law raises no presumption that he intended them as permanent improvements, to be left for the benefit of his landlord; and as a general rule he will be entitled to remove them during his term. For any injury to the freehold by reasons of such removal, he is of course liable to the landlord in damages.
>
> The matter of fixtures should have been left to the jury as a question of intention. Instead of doing so, the learned judge applied the law to certain facts of the case, and instructed the jury substantially that, if there was physical annexation, the articles could not be removed. This was error.

*Id.* at 440–41.

I believe the holding in *Seeger* is still good law today and should be applied to this new and emerging area of the law concerning the exception to sovereign and governmental immunity. Where the issue is joined in the third classification—where the Court cannot say *as a matter of law* that the particular fixture is clearly either personalty or realty—the question of whether a particular fixture is realty or personalty should be left to the jury to determine.