611 A.2d 219

Christopher M. NOLL, Timothy L. Noll and
Darlene M. Noll, His Wife, Appellees,

v.

PADDOCK POOL BUILDERS, INC.; Paddock Pool Equipment
Co., Inc.; Paddock Aquatic Facilities; Frost Company; Sta-
Rite Industries, Inc.; and YMCA of the USA.

Appeal of STA-RITE INDUSTRIES, INC.

Superior Court of Pennsylvania.

Argued March 11, 1992.

Filed June 3, 1992.

Reargument Denied Aug. 14, 1992.

James B. Young, Harrisburg, for appellant.

Anthony Stefanon, Harrisburg, for appellee Noll.

Before POPOVICH, HUDOCK and HESTER, JJ.

HUDOCK, Judge.

This appeal follows the grant of Plaintiffs'/Appellees' (the Nolls') motion to amend their complaint and the denial of Defendant's/Appellant's (Sta–Rite's) motion to amend its answer and new matter. We quash in part and remand in part.

This action arose out of an accident in which the plaintiff/appellee, Christopher Noll, was rendered a quadraplegic as a result of diving into a swimming pool from starting blocks anchored to the pool by bolts. The pool was located at the Westshore branch of the YMCA. The accident took place on May 17, 1987, and the complaint in this action was filed on September 8, 1988. Sta–Rite filed an answer and new matter. The Nolls' filed a motion to amend their complaint and Sta–Rite filed a motion to amend their answer and new matter to allege the statute of repose as a defense, claiming that the starting blocks were improvements to real property. The trial court, on June 5, 1991, granted the Nolls' motion to amend their complaint but denied Sta–Rite's motion to amend their answer stating that the starting blocks were *not* improvements but rather per-

sonal property, finding, therefore, that the statute of repose defense was not available to Sta–Rite. Sta–Rite has appealed this order.

Sta–Rite raises the following issues in their appeal:

1. Did not the trial court err by granting plaintiffs' Motion for Leave To Amend The Complaint to assert a theory of defective design after the expiration of the Statute of Limitations?

2. Did not the trial court err in denying Sta–Rite Industries, Inc.'s Motion for Leave To Amend New Matter to plead the Statute of Repose?

Appellant's Brief at 4.

■ Initially, we raise the issue of the appealability of the trial court's order. The Nolls' complaint was not dismissed, rather the court permitted it to be amended. Generally, an order granting leave to amend pleadings is interlocutory and, therefore, not immediately appealable. *Tate v. MacFarland,* 303 Pa.Super. 182, 449 A.2d 639 (1982). Unless a right to appeal is expressly granted by statute or rule of court, an appeal to this Court must be quashed if it is from an interlocutory order. *See* Pa.R.A.P. 311, 1311, 42 Pa.C.S.A. No one has been put out of court as the result of the order granting leave to amend the complaint and we, therefore, find that the part of the order allowing amendment of the complaint is interlocutory and quash that part of the appeal.

■ The second part of the order, denying Sta–Rite's motion to amend their answer and new matter, would appear to be interlocutory since Sta–Rite still has other valid defenses. Our decision in *Schaffer v. Litton Systems, Inc.,* 372 Pa.Super. 123, 539 A.2d 360 (1988), *alloc. den.,* 520 Pa. 583, 549 A.2d 916, however, holds that an order denying amendment to plead the statute of repose defense is a final appealable order. We will, therefore, address Sta–Rite's claim as to this issue.

Pa.R.C.P. 1033, 42 Pa.C.S.A., states:

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Although liberal amendment of pleadings is permitted in Pennsylvania, it will not be permitted where it is against a positive rule of law. *General Machine Corp. v. Feldman,* 352 Pa.Super. 180, 507 A.2d 831 (1986). The decision to permit amendment of pleadings rests in the sound discretion of the trial court. *Id.*

■ Sta–Rite argues that they should be permitted to amend their answer and new matter to plead the statute of repose, because the statute of repose is a non-waivable defense. Sta–Rite's Brief at 10. The Nolls', on the other hand, argue that the statute of repose is not available to Sta–Rite and, therefore, to permit them to amend their answer and new matter would be against a positive rule of law. The Nolls' Brief at 11. We must, therefore, examine whether the statute of repose is available to Sta–Rite before we can determine whether the trial court abused its discretion in denying Sta–Rite's motion to amend their answer and new matter.

■ 42 Pa.C.S.A. § 5536 (the statute of repose) reads in part:

(a) **General rule.**—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.

(2) Injury to property, real or personal, arising out of any such deficiency.

(3) Injury to the person or for wrongful death arising out of any such deficiency.

(4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).

We have long held that the statute of repose does more than merely limit the remedy of a party against another, as does a statute of limitations. *Schaffer v. Litton Systems, supra.* Rather, the statute of repose "eliminates all causes of action arising out of the negligence in construction or design of an improvement to real property which occurred more than twelve (12) years before the accident." *Id.,* 372 Pa.Super. at 125, 539 A.2d at 361. This defense is properly raised at any time and is, therefore, non-waivable. *Id.* Consequently, Sta–Rite is permitted to raise the statute of repose as a defense in their new matter. This, however, does not end our inquiry. Although it is a non-waivable defense, if the defendant is not entitled to protection under the statute, then the trial court may refuse to permit amendment because it would be against a positive rule of law.

The trial court stated in its opinion: "Sta–Rite argues its starting blocks were an 'improvement to real property', but it is clear they were not. The blocks were removable and attached to the pool by bolts. Sta–Rite cannot successfully assert an affirmative defense under the Statute of Repose. Therefore, the Court denied the amendment." Trial Court Opinion at 4. The issue before us then is whether or not the starting blocks in question are an "improvement to real property" under the statute of repose. The Nolls' argue that the trial court

relied upon facts of record developed over the course of more than three (3) years of litigation. The factual basis for this decision was summarized in [the Nolls'] Memo-

randum of Law in Opposition to Motion of [Sta–Rite] For Leave to Amend New Matter and the exhibits thereto. The Nolls' Brief at 5.

The Memorandum of Law to which the Nolls' refer lists (1) an answer of Sta–Rite to the Nolls' Interrogatories First Set # 14,[1] (2) the original invoice from Sta–Rite to Paddock Pool Equipment Co., Inc. listing the starting platforms, and (3) promotional literature and installation instructions, which were attached as exhibits. These are the items which we find the trial court could reasonably have relied upon in making its determination that the starting blocks were not improvements to real property.[2]

The parties turn next to their examination of the cases in Pennsylvania which have construed the statute of repose. Although there are cases which determine items as either improvements to real property or as personal property, our courts have not defined the term improvement to real property, and the statute does not provide a definition. Therefore, the determination of what constitutes an improvement to real property is made on a case-by-case basis. The parties cite the following cases in support of their positions which we find to be inapplicable because the issue of the *definition* of an improvement to real property was not in issue: *Misitis v. Steel City Piping Company*, 441 Pa. 339, 272 A.2d 883 (1971); *Leach v. Philadelphia Savings Fund Society*, 234 Pa.Super. 486, 340 A.2d 491 (1975); *Freezer Storage, Inc. v. Armstrong Cork Company*, 476 Pa. 270, 382 A.2d 715 (1978); *Fetterhoff v. Fetterhoff*, 354 Pa.Super. 438, 512 A.2d 30 (1986), *alloc. den.*, 514 Pa. 624, 522 A.2d 50 (1987); *McCormick v. Columbus Conveyor*

1. After a thorough review of the record before us, we do not find that these answers were filed as a part of the official record. We are, therefore, precluded from considering the information contained there.

2. The Nolls would argue that the trial court had before it all papers of record, but we find that in the setting of a motion to amend a pleading, it is more likely that the trial court did not examine the entire record with the scrutiny it would have if this motion had been one for summary judgment. The record in the case includes numerous pleadings, papers and depositions involving multiple parties.

*Company,* 522 Pa. 520, 564 A.2d 907 (1989); *McConnaughey v. Building Components,* 401 Pa.Super. 329, 585 A.2d 485 (1990), *alloc. granted,* 527 Pa. 667, 593 A.2d 842 (1991).

The following four cases which the parties cite have dealt with interpreting the term "improvement to real property". First, we examine *Mitchell v. United Elevator Company, Inc.,* 290 Pa.Super. 476, 434 A.2d 1243 (1981). In *Mitchell,* we held that an elevator system in an apartment building was an improvement to real property. The trial court erroneously focused on the uniformity of elevators from building to building in finding that it was not an improvement to real property. We reversed the trial court there saying that the trial court likened the installation of an elevator system, with its myriad components, motors, cables, wiring and machinery, to uncrating a television set and plugging it in. We were guided by Black's Law Dictionary's definition of the general term improvement:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intending to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure....

*Mitchell, supra,* 290 Pa.Superior Ct. at 488, 434 A.2d at 1249 (citing Black's Law Dictionary 682 (5th ed. 1979)). Our decision, however, does not explain how the Black's Law Dictionary definition of "improvement" relates to the finding that the elevator is an improvement. We referred, instead, to *Freezer Storage Inc. v. Armstrong Cork, supra,* holding that the elevator is at least as much an improvement to real property as the insulation material in the ceiling of a warehouse. As we said earlier, however, *Freezer Storage* did not address the definition of an improvement to real property. We do not find *Mitchell* is much guidance to us in our present case.

Next, the parties cite *Catanzaro v. Wasco Products, Inc.,* 339 Pa.Super. 481, 489 A.2d 262 (1985). There we determined that a skylight/skydome in the ceiling of a high school was an improvement to real property. In *Catanza-*

*ro*, we found that the skylight/skydome was like a window, and windows have been held to be fixtures. *Keeler v. Commonwealth, Department of Transportation*, 56 Pa. Cmwlth. 236, 424 A.2d 614 (1981).[3] We agreed with the Commonwealth Court that a fixture is, by definition, an improvement to real property. *Id.* We held:

> No Pennsylvania decision directly addresses the issue of whether a skydome/skylight is a fixture. However, analogous authority strongly suggests that a skydome should be considered a fixture.... In function and appearance, a skydome or skylight is virtually identical to a window. Moreover, a skydome, like a window, is physically annexed to a building and made a part thereof. Therefore, we do not hesitate in holding that a skydome is a fixture and as such, is an "improvement to real property" within the meaning of 42 Pa.C.S. Sec. 5536.

*Catanzaro*, 339 Pa.Superior Ct. at 485, 489 A.2d at 265 (footnote omitted). Although the definition of a fixture refers to the annexation of an item of personal property to real estate, we find that this definition is too general to be dispositive in our present case. Likening a skylight/skydome to a window is a much more direct analogy than likening a skylight/skydome to starting blocks in a pool.

The problem with using an analogy to our previous decisions is more acute in *Ferricks v. Ryan Homes, Inc.*, 396 Pa.Super. 132, 578 A.2d 441 (1990), *alloc. den.* 527 Pa. 617, 590 A.2d 757 (1991), 527 Pa. 618, 590 A.2d 758 (1991). We held in *Ferricks* that plywood used to construct a home was *not* an improvement to real property. The appellees in *Ferricks* argued that the plywood boards were an improvement to real property because they became "so affixed to the property that they cannot be removed without material injury to the real estate or to themselves." *Ferricks*, 396 Pa.Superior Ct. at 135, 578 A.2d at 443. We held:

---

**3.** A fixture has been defined by Pennsylvania courts as:
   an article of personal property which by reason of physical annexation to a building becomes in legal contemplation a part of the real estate. *See* 16 P.L.E. Fixtures Section 1 (1959 and Supp.1982). *Catanzaro*, 339 Pa.Super. at 485, n. 4, 489 A.2d at 265, n. 4.

Although we cannot disagree that the plywood did become an integral part of the structure build by Ryan Homes, we do not find this factor determinative of the question of whether the plywood was *itself* the improvement.

*Id.* (Emphasis in original). We found that the prior cases (*Mitchell, Fetterhoff, Catanzaro, Freezer Storage* and *McCormick*) did not address the same situation. We held:

The plywood manufacturers were merely furnishing a material to be used in the construction of the actual improvement. The plywood was simply a component part of a wall or floor which eventually made up the improvement on the real estate.

\* \* \* \* \* \*

A multipurpose building material such as plywood, which is merely used as a component in the creation of a finished product, does not come within the definition of the term "improvement".

*Ferricks* at 136, 578 A.2d at 443, 444. We continued, citing Judge Livingstone M. Johnson's trial court opinion:

The definition of the term improvement also caused Judge Johnson to observe that a building material such as plywood which is a single component of a greater whole is recognizable as some form of "improvement" only upon the application of "labor and capital" to create the construction of a structure or fixture. He accurately observed:

Any contrary finding would serve to advance the absurd result that building materials such as plywood, plate glass, aluminum sheeting or steel supports might be merely stock piled on a given piece of real estate and be thereby subject to inclusion under the Statute of Repose, as "improvement[s] to real property".

*Id.* at 137, 578 A.2d at 444. What distinguishes *Ferricks* from the present case is that we are not dealing with raw materials which make up an improvement. We therefore find that *Ferricks* is too dissimilar to aid us in the present case.

Finally, in *Radvan v. General Electric Company*, 394 Pa.Super. 501, 576 A.2d 396 (1990), we found that a weld and side trim machine was an improvement to real property. We relied on the trial court's finding that it was an improvement because:

> it had been in place for more than thirty years; it had never been moved since its installation; it was bolted to the floor and was connected to conduit piping for power; and because its "weight was in dozens of tons and it would have been very difficult to dismantle."

*Id.*, 394 Pa.Superior Ct. at 504, 576 A.2d at 397. Although *Radvan* arguably addressed some of the same features of the starting blocks, i.e., in place for length of time, bolted to the floor, we also find this case distinguishable because of the presence of facts which imply the intent of the parties to annex this machine to the real estate.

In each of the cases we have discussed, the problems faced by our Court have differed remarkably from the facts of our present case. So much so, that we find there is a need for clarification of the analysis process which should be used in cases like ours that require a determination of what constitutes an improvement to real property. We find that the Commonwealth Court has been faced with a similar problem in a slightly different context.

The Commonwealth Court has been called upon to define the term "real property" because of the exception to sovereign immunity. 42 Pa.C.S.A. § 8541 *et seq.* We find their analysis helpful in our interpretation of "improvement to real property". The Commonwealth Court, relying on a decision of our Supreme Court, divided property into three categories:

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not particularly fitted to the property with which they are used; these always remain personalty.... Second, those which are so annexed to the property, that they cannot be removed without material injury to the real estate or to them-

selves; these are realty.... Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending on the intention of the parties at the time of annexation.... *Clayton v. Lienhard,* 312 Pa. 433, 436–37, 167 A. 321, 322 (1933).

*Canon–McMillan School District v. Bioni,* 127 Pa.Cmwlth. 317, 320–21, 561 A.2d 853, 854 (1989) (*Canon–McMillan III*). If we apply these categories to the four cases we have discussed previously, we find that the elevator in *Mitchell* clearly falls into category two, real property, because it is reasonable to assume that to remove the elevator, which is clearly annexed to the property, would require a material injury to the building.[4] Next, we find that the skylight/skydome in *Catanzaro* falls into category two for the same reasoning we applied to the elevator. The plywood in *Ferricks* fits into category one, personalty, because it is not particularly suited to the property for which it is to be used. We held it was a multipurpose item and, therefore, it remains personalty. Finally, we examine the weld and side trim machine in *Radvan.* This machine appears to fall into category two provided the facts show that removing the machine would materially injure the real property or the machine. The facts as developed in our opinion did not address this, therefore, we can use this machine to illustrate the use of category three. Whether it becomes real proper-

4. We note, as the Commonwealth Court did in *Canon–McMillan School District v. Bioni,* 110 Pa.Cmwlth. 584, 533 A.2d 179 (1987), *alloc. granted,* 519 Pa. 668, 548 A.2d 257 (1988), *alloc. den.,* 520 Pa. 608, 553 A.2d 970 (1988), remanded 521 Pa. 299, 555 A.2d 901 (1989) (*Canon–McMillan I*), that:

   damage does not necessarily have to be physical damage. Our supreme court in *Central Lithograph Co. v. Eatmor Chocolate Co.,* 316 Pa. 300, 175 A. 697 (1934), found a material injury had been caused to the realty by the removal of certain personalty (candy making equipment) because the manufacturing plant's *value* would be materially diminished without the equipment.

   *Canon–McMillan I,* 127 Pa.Cmwlth. at 593, n. 9, 533 A.2d at 183, n. 9 (emphasis in original).

ty or remains personalty is determined by the intent of the party who annexes the item to the real property at the time it is annexed. The Commonwealth Court held:

> In determining intent, " 'it is not so much what a particular party intended his legal rights to be, as it is what intended use of the property was manifested by the conduct of the party.' " *McCloskey v. Abington School District,* 101 Pa.Commonwealth Ct. 110, 114, 515 A.2d 642, 644 (1986)....

*Canon–McMillan III,* 127 Pa.Cmwlth. at 321, 561 A.2d at 854–855 (footnote omitted). In *Canon–McMillan I* and *III,* a wood lathe in a school industrial arts class caused injury to a student. The Commonwealth Court found that the wood lathe was personal property (and therefore the school district was immune from liability) because the facts showed that the school district "did not intend to make the lathe part of the realty". *Id.* The Court found the following facts dispositive:

> [T]he wood lathe (1) was cast iron and weighed approximately 800 pounds, (2) had holes in each of its four feet for attachment but had not been attached to the floor, (3) was connected with a flexible electric wire to an electrical duct on the wall at the time of the accident, (4) had been moved to a different room at least once, and (5) had been moved short distances within the classroom for cleaning, coursework and classroom redesign.

*Id.,* 127 Pa.Cmwlth. at 321, 561 A.2d at 855 (citing *Canon–McMillan I,* 110 Pa.Cmwlth. at 594, 533 A.2d at 183. The Court also found the following facts important:

> School District witnesses testified that the lathe had not been attached to the floor because the industrial arts department needed flexibility, ...; that the industrial arts program was modified at the direction of the Department of Education to accommodate an exploratory program, ...; that the lathe had been moved to different classrooms within the school and within the classroom itself, ...; that at the time of installation the lathe was plugged into a conventional 220 electrical outlet, ...; and

that at the time of the accident the lathe was hardwired to the wall of the classroom.... Thus, as we noted in *Canon–McMillan I*, the lathe is connected to the realty only by gravity and an electrical connection.

*Canon–McMillan III*, 127 Pa.Cmwlth. at 321–22, 561 A.2d at 855. These facts were necessary for the court to determine the intent of the parties. The Commonwealth Court held that intent is a question for the factfinder, although the question of what is real estate is a matter of law for the court to determine. *See Canon–McMillan III, supra*, and *Wilson v. Ridgway Area School District*, 141 Pa.Cmwlth. 607, 596 A.2d 1161 (1991).

We are persuaded that the analysis employed in the *Canon–McMillan* cases would aide our Court's analysis of what constitutes an improvement to real property. We recognize that "real property" and "improvement to real property" are not identical terms. We do find, however, that "real property" in the second and third categories, as defined by *Clayton v. Lienhard, supra*, start as personal property and become improvements to the real property to such an extent that they are considered real property for purposes of the sovereign immunity exception for real property.

The courts of Pennsylvania have construed this exception to sovereign immunity narrowly so as to limit causes of actions against governmental entities. *Wurth by Wurth v. City of Philadelphia*, 136 Pa.Cmwlth. 629, 584 A.2d 403 (1990). Likewise, Pennsylvania courts have construed the statute of repose (42 Pa.C.S.A. § 5536) broadly so as to limit the causes of actions by plaintiffs against those individuals covered in that statute. We find that in both instances, the expressed legislative intent is to limit the actions of plaintiffs. Therefore, we find that to accept the analysis of the Commonwealth Court as the analysis we should apply in our Court is in harmony with the expressed legislative intent of both statutes.

In applying this analysis to the present case, we find the trial court relied on the following facts in its

decision: The starting blocks were removable and annexed to the pool by bolts. It is not clear that these starting blocks are "manifestly furniture" which is "not particularly fitted to the property with which they are used", and, therefore, they do not fall squarely within category one (personalty). It is also not clear that these starting blocks were so annexed to the real property that to remove them would cause "material injury to the real estate or to themselves", and, therefore, they do not fall squarely within category two (realty). That leaves category three, to which these items seem to fit quite well. To reiterate, category three contains those items:

> which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed....

*Canon–McMillan III, supra,* 127 Pa.Cmwlth. at 320, 561 A.2d at 854. The trial court in the present case found that the starting blocks were removable and were attached by bolts. Trial Court Opinion at 3. These facts tend to place the starting blocks in category three, but do not tell us anything about the intent of the parties. Under the analysis we adopt today, the determination of whether a category three item is personalty or an improvement to real property must be based on the intent of the party annexing the item at the time it is annexed. In other words, we must know what the YMCA intended at the time the starting blocks were installed. This must be determined from the conduct of the YMCA. We do not have those facts before us. Therefore, we find that we do not have sufficient facts of record to determine whether the trial court abused its discretion in denying Sta–Rite's motion to amend their answer and new matter.

We remand to the trial court to determine whether the statute of repose is an available defense to Sta–Rite in light of our decision here requiring the intent of the parties to be considered. We quash as interlocutory that part of the

appeal which challenges the grant of the Nolls' motion to amend their complaint.

Order quashed in part and remanded in part for further proceedings. Jurisdiction relinquished.

POPOVICH, J., files a Concurring and Dissenting Opinion.

POPOVICH, Judge, concurring and dissenting.

I join in all but that portion of the Majority's Opinion denying Sta–Rite Industries, Inc. the opportunity to amend its answer and new matter to assert the Statute of Repose defense until a fact-finding proceeding is held to ascertain the (co-defendant's) YMCA's "intention" in installing "starting blocks" in its swimming pool.

The plaintiff was injured allegedly upon using the starting blocks. The blocks were anchored to the edge of the pool with bolts. However, the blocks were detachable upon removal of the bolts. Because this causes the blocks to fall within category three (physically attached, but removable without destroying chattel or property to which annexed) of the Majority's newly created personalty/realty test for application of the Statute of Repose, a remand is perceived necessary to remedy the void with regard to the "intention" of the YMCA when the blocks were fitted to the pool.

The Majority believes that the YMCA's "intention" is pivotal to a determination of whether an item of personalty is to be treated as realty, and, ultimately, whether its conversion insulates Sta–Rite Industries, Inc. under the Statute of Repose.

I believe that the Majority invites a response on remand that: "At the time the personalty was put in place—annexed to the realty—the intention was to have it become a *permanent* improvement despite its detachability from the realty." This would invite parroting the correct words to circumvent accountability.

Accordingly, unlike the Majority, I would endorse a review of the facts to make an *objective* versus a *subjective* analysis of "any person lawfully performing or furnishing

the design, planning, supervision or observation of construction, or construction of any improvement to real property ... within 12 years after completion of construction of such improvement...." 42 Pa.C.S.A. § 5536(a). To do otherwise would open the door to a perversion of the personalty/realty test.

The facts need not be supplemented except through the amendatory pleading rules of civil procedure. Otherwise, the case should stand on its merits as developed by the pleadings, interrogatories, answers and depositions.

At bar, my review of the record discloses that the starting blocks fall into the Majority's category three:

Personalty physically attached to realty, but is removable without destruction to the product or the property to which it is affixed.

Under such a standard, I find the starting blocks to be part and parcel of the realty, the consequences of which trigger the Statute of Repose and afford Sta–Rite Industries, Inc. the opportunity to amend its answer and new matter without resorting to a needless remand for fact-finding. The record is sufficient to stand on its own.

For the reasons herein stated, I respectfully join in part and dissent in part.