**Janes v. Central Montgomery County Area Vocational Technical School**

*Marshall Grabois*, for plaintiff.
*Joseph McNulty Jr.*, for defendant Montgomery County Area Vo-Tech School.
*Geoffrey Beauchamp*, for defendants Montgomery County, Department of Training & Employment and Neighborhood Youth Corps.

LAWRENCE, *J.*, December 12, 1995—This is an appeal by Kimberly Janes, a minor, by her parent and natural guardian, Mary Janes, from this court's order of September 19, 1995 granting summary judgment in favor of defendants, Central Montgomery County Area Vocational Technical School, Montgomery County, Montgomery County Department of Training & Employment and Neighborhood Youth Corps, and dismissing the claims against them. On September 28, 1987, plaintiff filed an amended pleading against defendants

for personal injuries she sustained as a result of an accident at Central Montgomery County Area Vocational Technical School on July 14, 1986. At that time, minor plaintiff was a student participating in a vocational exploration program at the school pursuant to a subcontract between the school and the Montgomery County Training and Employment Program. While engaged in the industrial arts portion of the program, Kimberly's hand became entangled with a sander. She alleged in her pleading that the sander was defective and that defendants' negligent supervision and maintenance of the sander caused her injury.

Defendants filed an answer and new matter, denying any defect in the sander and pleading the affirmative defense of governmental immunity pursuant to the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq. Thereafter, defendants filed a motion for summary judgment alleging immunity from suit as a matter of law and that the action did not fall within any of the enumerated exceptions of 42 Pa.C.S. §8542. In her response to the motion, plaintiff denied defendants were protected by the Act but did not plead the exception to immunity under which she was pursuing her action. In her brief, however, she argues that the facts place the action within the "real property" exception,[1] contending that the sander was affixed to the school property so as to become an integral part of the realty itself.

The motion for summary judgment is twofold: first, defendants contend that plaintiff cannot sustain her burden of showing that the sander is "realty." Second, all defendants with the exception of the school assert

---

1. This exception allows a cause of action where the plaintiff's injury is caused by the care, custody, or control of real property in the possession of the local agency. 42 Pa.C.S. §8542(b)(3).

as a separate basis that minor plaintiff did not establish they were in possession of the premises or the sander on the day of the incident and that, therefore, the real estate exception does not apply to them. The court agreed that plaintiffs failed to state a claim within the exception and dismissed all claims against defendants.[2] Plaintiff now appeals this final order.

A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b). In ruling on a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991).

In the instant case, the parties agree that defendants, with the exception of the Neighborhood Youth Corps, are local agencies,[3] and as such are immune from liability unless the real estate exception applies. It must be recognized that the expressed legislative intent to insulate the Commonwealth and its political subdivisions from liability requires the court to interpret any exception to government immunity narrowly. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987).

We believe the threshold question of whether the sander is classified as "personalty" or "realty" is dispositive of the matter. The Pennsylvania Supreme Court

2. Faulty supervision and inadequate instruction have repeatedly been determined to be insufficient to impose liability under the exceptions to governmental immunity. See *McCloskey v. Abington School District,* 115 Pa. Commw. 289, 539 A.2d 946 (1988).

3. As will be discussed *infra,* minor plaintiff disputes that the Neighborhood Youth Corps is a local agency.

has designated three classes into which chattels connected with realty may fall:

"First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty. . . . Second, those which are so annexed to the property, that they cannot be removed without material injury to the real estate or to themselves; these are realty . . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation . . . ." *Clayton v. Lienhard,* 312 Pa. 433, 436-37, 167 A. 321, 322 (1933). (citations omitted)

When determining a party's intent, the court does not consider what a particular party intended his or her legal rights to be, rather what intended use of the property was manifested by the party's conduct. *In re Appeal of Sheetz Inc.,* 657 A.2d 1011 (Pa. Commw. 1995).

The Pennsylvania appellate courts have recently addressed factual situations similar to that in the case at bar. In *Canon-McMillan School District v. Bioni,* 127 Pa. Commw. 317, 561 A.2d 853 (1989) *(Canon-McMillan III),* the Commonwealth Court, on remand from the Supreme Court, was instructed to determine, as a matter of law, whether a lathe in a high school wood shop was personalty or realty. The court held that an 800 pound lathe which had been removed on occasion to different portions of a school room and which was connected to the realty only by gravity and a hardwire electrical connection fell under the third

category as personalty, and therefore plaintiff's cause of action did not fall within the real property exception to immunity.

In *Wilson v. Ridgway Area School District,* 141 Pa. Commw. 607, 596 A.2d 1161 (1991), *allocatur denied,* 530 Pa. 650, 607 A.2d 258 (1992), the Commonwealth Court upheld the lower court's entry of judgment in favor of the school district in an action seeking damages for personal injuries to a high school student from a table saw in a high school wood shop. In addressing the issue of whether the district's intent to treat the saw as a fixture or personalty presented a question of law or a disputed question of fact, the court reiterated,

"for the purpose of clarity . . . when property falls within the third class described in *Clayton,* the question of whether property is realty or personalty, is a question of law to be based on the facts as to the property owner's manifest conduct." *Id.* at 613, 596 A.2d at 1164.

The *Wilson* court affirmed the lower court's conclusion that the saw was personalty for purposes of determining the school district's immunity, finding no basis to distinguish the facts from *Canon-McMillan III.*

"We note, as did the trial court, the similarities of this case to *Canon-McMillan III.* Both cases involve an accident involving a woodworking machine in a high school wood shop. Both machines had substantial weight and neither was attached to the floor. Both machines were only physically connected to the real estate by their electric cords. Both machines were occasionally moved for cleaning purposes. . . . [Plaintiff and additional defendant] assert that this case is distinguishable from *Canon-McMillan III,* because of additional evidence which they argue is relevant to district's intent.

This additional evidence is a 1959 blueprint of the high school which shows the present site of the saw; and an admission that the saw was never removed from the wood shop. . . . The trial court considered these additional facts and concluded that they did not provide a basis to distinguish *Canon-McMillan III* as a matter of law. We agree that these additional facts have little to do with the intended character of the property. As to the blueprint, plans to place personal property on real estate can be made despite a separate plan to eventually remove the property. This second intention is more relevant to the personalty-realty question. Additionally, the non-movement of property is not manifest conduct of a property owner and speaks very tenuously, if at all, to any intent as to the nature of the property. We hold that based on the undisputed facts concerning district's manifest conduct, the trial court correctly concluded that the saw was personalty." *Wilson, supra* at 612-14, 596 A.2d at 1164-65. (citations omitted)

Most recently, the Pennsylvania Supreme Court approved the analogy of an improvement to real estate under 42 Pa.C.S. §5536 to "real property" under the governmental immunity exception. *Noll by Noll v. Harrisburg Area YMCA v. Paddock Pool Builders Inc.,* 537 Pa. 274, 643 A.2d 81 (1994). The court held that in order to make an objective determination of whether an object is a fixture for purposes of section 5536, considerations should include the degree to which and manner in which the object is attached to the real property, the ease of removing the object, whether the object may be removed without damaging the real property, how long the object has been attached to the real property, and whether the object is necessary or essential to the real property. *Noll, supra.*

Applying all of these considerations to the instant case, the sander clearly falls within the third category.

Further, defendants' manifest conduct supports our conclusion that they did not intend to make the sander a part of the realty. Samuel Stearly, the instructor of industrial production and maintenance at the school, provided the following uncontradicted evidence about the sander. He stated that when the school was constructed in 1968, the original plans for the building made no particular mention of any tools or machines that were subsequently used or purchased. He stated that at the time of the incident, one sander was assigned to the industrial production maintenance room, one to the carpentry room and a third was on a table that was to be moved to wherever required. The sanders were to be used to teach a variety of industrial art courses.

Stearly described the sander at issue as 42 inches high, 36 inches wide and long and weighing 200 pounds. It was stabilized for safety by being attached to the floor by three or four lag screws and was powered by an external wire to a power bar that ran across the ceiling. He explained that the power bar permits the unit to be connected anywhere in the entire length of the room, depending on its location.

Stearly also stated that although it was not made to be portable, it could be unscrewed from the floor and disconnected from the wiring, which would not cause material injury to the sander or the building.

Plaintiff highlights an apparent contradiction in the record as to whether the sander had ever been moved since its installation. Stearly stated in his deposition that the sander had been located in the same classroom since its installation in 1979. (N.T. 8-24-87, p. 97.) In his affidavit submitted in support of defendants' summary judgment motion, he claimed the sander had been moved several times and was not intended to be per-

manently annexed to the building. (Exhibit "E" to defendants' motion for summary judgment.)

A contradiction in the evidence regarding whether the sander had been moved does not raise a triable issue of fact. As mentioned above, the *Wilson* court found that non-movement of the property is of no particular consequence, unlike the intent to eventually remove it. Here, the placement of the sander was such that although it was connected to the floor, it was not permanently affixed there, as reflected by the evidence that the power cable runs the length of the ceiling so as to enable the sander to operate from a number of locations in the room.

Nor is the sander essential to the permanent use or operation of the school. See *Gore v. Bethlehem Area School District,* 113 Pa. Commw. 394, 537 A.2d 913 (1988), *appeal denied,* 519 Pa. 656, 546 A.2d 60 (1989); compare *Singer v. School District of Philadelphia,* 99 Pa. Commw. 553, 513 A.2d 1108 (1986). (Mats used in a gymnasium are an integral part of the hardwood floors, which were regularly used as a gymnastic stunt area.) The sander is also removable without damage to the realty, certainly much easier to move than the 800 pound lathe determined to be personal property in *Canon-McMillan III.* Compare also, *Radvan v. General Electric Co.,* 394 Pa. Super. 501, 576 A.2d 396 (1990), *allocatur denied,* 527 Pa. 602, 589 A.2d 692 (1991) (Weld and side trim machine was held to be an improvement to real property within the meaning of 12 year statute of repose for construction projects because it had been in place for 30 years, had never been moved since its installation, it was bolted to the floor and was connected to conduit piping for power and because its *"weight was in dozens of tons and . . . would have been very difficult to dismantle."* Id. at 504, 576 A.2d at 397.) (emphasis added)

Even assuming arguendo that a jury question exists as to whether the sander is real property, no proof was presented that any defendant (with the exception of the school) had possession of the real property. Although we need not reach the issue given the above discussion, this is by itself fatal to plaintiff's cause of action against these defendants, for to be considered realty, the political subdivision must have a possessory interest in both the chattel and the realty. Control or occupancy can constitute possession for purposes of section 8542(b), without regard to ownership.

L.C. Yohe, acting director of the Montgomery County Division of Public Property, a division of the Montgomery County Public Works Department, stated that on July 14, 1986, the school was not owned, possessed, controlled or maintained by Montgomery County or any agency or department of Montgomery County.

As to the sander itself, plaintiff makes only a conclusory allegation that the sander was owned, operated and possessed by defendants; no supporting facts are cited or found in the record. On the contrary, the sole evidence regarding possession of the sander is that the school purchased it in 1979 and has maintained it ever since on the premises, using it not only for the vocational exploration program but also for regular vo-tech classes.

Leola Hubbard, employed by the Montgomery County Training and Employment Department as deputy director of youth programs, stated that the contract between the county and the school was the operative document. A review of the contract reveals no provision assigning the responsibility for the equipment to the county; the contract provides that the school will implement and conduct the program and that training

would be provided at the school. (Exhibit "B" to defendants' motion for summary judgment.)

Not only did the evidence fail to show that the county exercised control over the school's equipment used in the program, it also neglected to establish the county's involvement in the actual course of instruction given to the individual students involved. (N.T., Hubbard, p. 23.) The county merely agreed on the shop areas that were to be taught, and the school submitted a course of instruction to the county. The school staff ran the program. Based on the record submitted, there is no genuine factual dispute that these defendants did not possess the sander.

As a final point, plaintiff contends that the program in which Ms. Janes was a participant, Neighborhood Youth Corps, is not a local agency and therefore not entitled to assert the defense of governmental immunity. Rather, she asserts, it is an independent, non-profit corporation with no established relation to either Montgomery County or Montgomery County Training and Employment Program. We disagree.

The facts bear out that the Neighborhood Youth Corps is not independent of the Montgomery County Training and Employment Department. Ms. Hubbard, an employee of the Montgomery County Training and Employment Department, stated that the corps is simply a program run by the department and has never been incorporated separately from the department. The vocational exploration program in which minor plaintiff participated was "just a component of the summer Neighborhood Youth Corps program." (N.T., Hubbard, p. 5.) Ms. Hubbard retained "full responsibility" for the operation of the corps (N.T., Hubbard, p. 4), with her department drafting the "annual plan" for all its programs, including the vocational exploration program.

The plan is then submitted to the state for approval and administered by the county.

Funding for the Neighborhood Youth Corps is channeled from the federal and state levels to the county.

Ms. Hubbard also identified the "Handbook for Participants and Supervisors in the Neighborhood Youth Corps," which is illustrative that the county holds itself out as the sponsor of the corps. (Exhibit P-2 to deposition of Hubbard.)[4]

Further, Ms. Hubbard, in stating that her department determines eligibility for the program, noted that participants must reside in the county (N.T., Hubbard, p. 9) and that only county vo-tech schools are selected to implement the vocational exploration program. (N.T., *Id.*) Accordingly, there is no valid factual dispute that the Neighborhood Youth Corps enjoys the same immunity as does the county department out of which it operates.

In view of the foregoing, this court properly concluded that governmental immunity precludes minor plaintiff's causes of action against defendants and, accordingly, it is respectfully requested that the court's order granting summary judgment in this case be affirmed.

(Appealed to the Commonwealth Court October 23, 1995)

---

4. The county's initiation and sponsorship of the vocational exploration program was confirmed by Stearly. (N.T. 8-24-87, pp. 23-24.)