607 A.2d 806

Giovanni MISEO, Joan Miseo, his wife, Anthony Cifelli, Sr. and Lorraine Cifelli, his wife, Individually and as Parents and Natural Guardians of Anthony Cifelli, Jr., a minor and Christina Cifelli, a minor, Appellants,

v.

ROSS TOWNSHIP POLICE DEPARTMENT, Pennsylvania State Police Department, Commonwealth of Pennsylvania et al., Appellees.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1991.

Filed April 13, 1992.

Reargument Denied June 24, 1992.

Nicholas S. Mattise, for appellants.

Joseph J. Musto, for appellees.

Before PALLADINO and McGINLEY, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Joan and Giovanni Miseo and Lorraine and Anthony Cifelli, Sr., individually and as parents and natural guardians of

minors Anthony Cifelli, Jr. and Christina Cifelli (collectively, Claimants) appeal that portion of the September 25, 1990 order of the Court of Common Pleas of Luzerne County (trial court) which granted summary judgment in favor of Ross Township Police Department (Township) and dismissed Township as a defendant. We affirm.

On December 20, 1985, Claimants filed a complaint against Township seeking compensation for injuries which Claimants received in a February 3, 1984 motor vehicle accident on a section of state-designated highway Route 118 which was within the physical boundaries of Ross Township.[1]

The complaint alleged that Claimants' injuries were caused by Township's negligence in:

(a) Failing to post or place flares, warning signs or lights, or other traffic control devices sufficient to warn oncoming traffic of the icy roadway and of the existence of the vehicles blocking the roadway;

(b) Failing to block the roadway or otherwise prevent traffic from using the roadway made dangerous by its icy condition;

(c) Allowing vehicles assisting at the site of the earlier accident to park on the roadway and block off the lanes of travel without allowing a lane of travel for oncoming vehicles.

Claimants' Complaint, paras. 46 and 47, at R. 9a–10a.

Pursuant to Pa.R.C.P. No. 1035, Township, after depositions and interrogatories, filed a motion for summary judgment based on Township's immunity from suit. Claimants relied on the exception to governmental immunity at 42 Pa.C.S. § 8542(b)(4), i.e., dangerous condition of traffic signs, lights or other traffic controls under the care, custo-

---

**1.** The complaint also averred various negligent acts by the Pennsylvania State Police Department, the Pennsylvania Department of Transportation, and Don Wesley, individually and trading as Don Wesley's Body Shop. However, because the present appeal involves only that portion of the trial court's September 25, 1990 order which granted summary judgment to Township, we shall confine our discussion to the averments concerning Township.

dy or control of Township. On September 25, 1990, the trial court issued an opinion and order which granted summary judgment to Township, and from which Claimants appeal.

■ Our scope of review is limited to determining whether the trial court committed an error of law or abused its discretion in entering summary judgment. *Peters Township School Authority v. United States Fidelity and Guaranty Co.*, 78 Pa.Commonwealth Ct. 365, 467 A.2d 904 (1983). Claimants' appeal raises two issues: (1) whether the trial court erred in granting summary judgment to Township because Claimants failed to allege facts sufficient to support a cause of action in negligence against Township, *see* 42 Pa.C.S. § 8542(a), and therefore Township's actions could not fall within the exception to governmental immunity at subsection 8542(b)(4), and (2) whether the trial court abused its discretion by denying the request of Claimants for leave to amend their complaint so that Claimants could amplify their factual allegations against Township and thereby attempt to avoid summary judgment in favor of Township.

### I. Summary Judgment Standards

As explained in *Peters Township School Authority,*

[a] summary judgment may be properly entered only where the moving party has established that there remains no genuine issue of material fact and that it is entitled to judgment as a matter of law.... In determining whether to enter a summary judgment, a court must view the record in the light most favorable to the nonmoving party.... The moving party's burden to prove that its right to a summary judgment is clear and free from doubt is a heavy one.

*Id.*, 78 Pa.Commonwealth Ct. at 369, 467 A.2d at 906; *accord* Pa.R.C.P. No. 1035(b).

On appeal, Claimants have not asserted any disputes as to the facts material to a resolution of this case.[2] Claimants

2. It is undisputed that Route 118 is a state-designated highway part of which is located within the physical boundaries of Township.

contend that the trial court's entry of summary judgment in favor of Township was improper because, pursuant to the principles of governmental immunity enunciated in what is commonly called the Political Subdivision Torts Claim Act (Act), 42 Pa.C.S. §§ 8541–8564, Township was not entitled to judgment as a matter of law.

To preclude the entry of summary judgment in favor of Township, Claimants had to allege facts sufficient to show Township's liability to Claimants for the injuries resulting from the February 3, 1984 motor vehicle accident in Ross Township. 42 Pa.C.S. §§ 8541–8542. Specifically, through the parties' pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, *see* Pa. R.C.P. No. 1035(a), Claimants had to show (1) that they had a cause of action in negligence against Township, 42 Pa.C.S. § 8542(a), and (2) that Township's negligent acts fell within the exception to governmental liability listed at 42 Pa.C.S. § 8542(b)(4).

## II. Negligence

■ Claimants assert that, in conformity with 42 Pa.C.S. § 8542(a)(1), either a statutory or a common-law cause of action in negligence against Township was created (1) by Township's failure to place any traffic-control devices on Route 118, (2) by Township's alleged inadequate placement of traffic-control devices on Route 118, or (3) by Township's alleged failure to use police officers to regulate traffic on Route 118 by means other than traffic-control devices. The elements of a cause of action in negligence are a statutory or common-law duty requiring the actor to conform to a certain standard of conduct, the actor's breach of the duty by failing to conform to the mandated standard of conduct, and an injury (actual loss or damage) to another's interests proximately caused by the actor's breach of duty. *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983); *Farber v. Engle*, 106 Pa.Commonwealth Ct. 173, 525 A.2d 864 (1987).

## A. *Statutory Duty*

■ Under sections 6109 and 6122 of the Vehicle Code, 75 Pa.C.S. §§ 6109 and 6122, a township is authorized to regulate traffic on state-designated highways within its physical boundaries by means of official traffic-control devices or police officers. However, sections 6109 and 6122 do not impose an affirmative statutory duty on a township to regulate traffic on a state-designated highway. *Mindala v. American Motors Corp.*, 518 Pa. 350, 543 A.2d 520 (1988) (no absolute duty to act is created by section 6109); *Bruce v. Department of Transportation*, 138 Pa.Commonwealth Ct. 187, 588 A.2d 974 (1991) (section 6122 is discretionary); *Bendas v. Township of White Deer*, 131 Pa.Commonwealth Ct. 138, 569 A.2d 1000 (1990) (section 6122 is not obligatory); *Buffalini v. Shrader*, 112 Pa.Commonwealth Ct. 228, 535 A.2d 684 (1987) (section 6109 is permissive).

■ Consequently, in the present case, Township did not owe a statutory duty to Claimants to regulate traffic on Route 118 either by erecting official traffic-control devices on Route 118 [3] or by using police officers to direct traffic on Route 118.

## B. *Common–Law Duty*

Claimants argue that, given the dangerous condition of Route 118 on February 3, 1984, Township had a common-law duty to regulate traffic on Route 118 through the proper use of traffic-control devices or police officers.

### 1. Traffic–Control Devices

■ Pennsylvania's appellate courts have repeatedly denied the existence of a common-law duty on the part of a township or other local government body to erect official traffic-control devices. *Bendas; Farber; see Mindala.*

**3.** For the sake of completeness, we also note that an absence of official traffic-control devices does not constitute a dangerous condition of official traffic-control devices for the purposes of imposing liability on a local government agency under subsection 8542(b)(4) of the Act. *Garrett v. Moyston*, 127 Pa.Commonwealth Ct. 488, 562 A.2d 386 (1989).

Nevertheless, it is well settled that, if a township or other local government body exercises its discretionary authority under sections 6109 and 6122 to erect an official traffic-control device, the township or other local government body then has a common-law duty to utilize and maintain the device properly. *Bendas; Farber.*

Claimants assert that, on February 3, 1984, Township erected official traffic-control devices on Route 118 by putting flares on the highway to warn approaching motorists of dangerous highway conditions and that, in so doing, Township acted negligently by inappropriately positioning the flares. Claimants do not offer any support for their assertion that flares constitute official traffic-control devices, and our research has not disclosed any.

■ The phrase "official traffic-control devices" is defined in section 102 of the Vehicle Code, 75 Pa.C.S. § 102, and in the PennDOT regulation at 67 Pa.Code § 211.1 as "[s]igns, signals, markings and devices not inconsistent with this title [i.e., the Vehicle Code which is Title 75 of Pennsylvania Consolidated Statutes] placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic." Flares are not explicitly discussed in any of the statutory or regulatory provisions concerning official traffic-control devices.

The PennDOT regulations at 67 Pa.Code §§ 211.21–.32 define the word "signs" by stating the dimension, lettering, construction material, message content, symbol design, and placement requirements for traffic signs and by listing several, different, permissible types of traffic signs such as speed limit signs, stop signs, and truck weight limit signs. The regulation at 67 Pa.Code § 211.27 details the acceptable kinds of illumination that may be used to make the message or symbol on a traffic sign more visible. It is apparent from the PennDOT regulations that flares constitute neither traffic signs nor acceptable forms of illumination which may accompany traffic signs.

The word "signals" is defined in the PennDOT regulation at 67 Pa.Code § 211.1 to encompass "[a]ny power-operated traffic control device, except a sign, barricade warning light, flashing arrow board, or steady burn electric lamps, by which traffic is warned or is directed to take some specific action." Because traffic signals are power-operated traffic-control devices, flares cannot qualify as traffic signals.

The phrase "traffic control signal" is separately defined in the PennDOT regulation at 67 Pa.Code § 211.1 as a "device, whether manually, electrically, or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed." Inasmuch as flares do not alternately stop and permit the flow of traffic, flares are not traffic control signals.

The word "markings" is defined in the PennDOT regulation at 67 Pa.Code § 211.1 as "[a]ll lines, patterns, words, colors, or other devices, except signs and power operated traffic control devices, set into the surface of, applied upon, or attached to the pavement or curbing or to objects within or adjacent to the roadway." Pavement and curb markings include such items as center-line and two-lane street markings, pedestrian crosswalk markings, parking space markings, and highway exit ramp markings. 67 Pa.Code §§ 203.71–.72 and 211.1131–.1214. The PennDOT regulation at 67 Pa.Code § 211.1135 mandates that pavement markings be yellow, white or red in color and further states that black may be used in combination with the three specified colors for contrast to increase the visibility of the markings. Indisputably, flares cannot be deemed "markings."

Flares are expressly described in the PennDOT regulations at 67 Pa.Code §§ 167.3–.5 and .8 as liquid-burning, warning devices which must be carried as emergency equipment on certain types of vehicles to alert oncoming motorists to dangers posed by the stopping or disabling of these vehicles on a roadway or road shoulder.

The differences between the aforementioned statutory and regulatory provisions governing official traffic-control devices and the regulatory provisions exclusively governing flares further indicate that flares are not official traffic-control devices. Whereas official traffic-control devices must be "placed or erected by authority of a public body or official having jurisdiction," 75 Pa.C.S. § 102; 67 Pa.Code § 211.1, flares are to be positioned on a roadway by the driver of a stopped or disabled vehicle. 67 Pa.Code § 167.8. Moreover, section 6122 of the Vehicle Code states that, generally, a township must obtain approval from PennDOT before erecting an official traffic-control device on a state-designated highway whereas the regulation at 67 Pa.Code § 167.8 does not require a vehicle driver to receive approval from PennDOT or any other authority before placing flares on a roadway. In fact, the regulation at 67 Pa.Code § 167.8 does not allow any opportunity for a driver to secure approval before using flares because the regulation mandates that a driver place flares or other sanctioned emergency warning devices on a roadway "as soon as possible, but in any event within 10 minutes" after the driver's vehicle becomes stopped or disabled upon the roadway.

Additional guidance in interpreting the expression "official traffic-control devices" is provided by subsection 3111(a) of the Vehicle Code, 75 Pa.C.S. § 3111(a), which requires the driver of any non-emergency vehicle to "obey the instructions of any applicable official traffic-control device" unless otherwise directed by a uniformed police officer or other appropriate official. Citing subsection 3111(a), we held in *Garrett* that a bus stop did not qualify as an official traffic-control device because "[o]ne cannot 'obey the instructions of' a bus stop." *Id.*, 127 Pa.Commonwealth Ct. at 497, 562 A.2d at 391. Similarly, one cannot obey the instructions of a flare inasmuch as a flare does not specify any particular action which a driver must perform.

Given the distinct statutory and regulatory provisions concerning the definitions and uses of official traffic-control devices and flares, we are compelled to conclude that flares

are not official traffic-control devices. The Township cannot be charged with a common-law duty to utilize and maintain properly an instrumentality which we conclude is not an official traffic-control device. Therefore, we must also hold that Claimants have not established a cause of action in negligence against Township based on Township's February 3, 1984 placement of flares on Route 118.

## 2. Police Regulation of Traffic

Next, we consider whether, on February 3, 1984, Township had a common-law duty to regulate traffic on Route 118 by the reasonable use of police officers and the reasonable means at the officers' disposal. We deem the Pennsylvania supreme court's analysis in *Mindala* to be dispositive in this regard.

In *Mindala,* several motorists were involved in an automobile accident at the intersection of two state-designated highways in a township in Lancaster County. On the day of the accident, a stop sign was missing from the intersection. The stop sign had been erected by the Commonwealth. Twenty-four hours prior to the accident, the township police had been informed that the stop sign was missing from the intersection. The township police travelled to the intersection to verify that the stop sign was missing. The township police did nothing to alert motorists to the potential danger at the intersection caused by the missing stop sign.

The supreme court acknowledged that under the Vehicle Code, the township did not owe a statutory duty to the motorists involved in the accident. Nevertheless, "[b]alancing the motorists' need for protection with the resulting burden imposed upon the [t]ownship police," the supreme court concluded that the township did have a common-law duty to protect the motorists. *Id.,* 518 Pa. at 362, 543 A.2d at 526.

The supreme court reasoned that "[s]ince the township police possessed statutory authority to regulate traffic [pursuant to the Vehicle Code], had knowledge of a dangerous situation [i.e., 24 hours' advance notice that a stop sign was

missing from the highway intersection], and the capability to rectify the problem [by using a portable stop sign which the police possessed, by activating warning devices on a police patrol car, by having township police officers direct traffic, by summoning help from the nearby state police barracks], a [common-law] duty was created to reasonably exercise that authority and the failure to do so violated that duty." *Id.*, 518 Pa. at 363, 543 A.2d at 527; *accord Socarras v. City of Philadelphia*, 123 Pa.Commonwealth Ct. 197, 552 A.2d 1171, *petition for allowance of appeal denied*, 522 Pa. 608, 562 A.2d 829, and *petition for allowance of appeal denied sub nom. Petition of City of Philadelphia*, 522 Pa. 605, 562 A.2d 828 (1989).

■ Observing the similarity between the facts in *Mindala* and the factual allegations in the present case, we conclude that Claimants have averred sufficient facts to show that, on February 3, 1984, Township owed a common-law duty of care to Claimants to regulate traffic on Route 118 through the reasonable use of police officers and the reasonable means at their disposal. Like the police in *Mindala*, Township police had statutory authority under the Vehicle Code to regulate traffic on the state-designated highway in question (here, Route 118 within Township's boundaries). Like the police in *Mindala*, Township police had knowledge of dangerous conditions on the state-designated highway in question (here, the dangerous conditions of Route 118 caused by the icy roadway surface and the presence of automobiles involved in an earlier accident on Route 118).[4] Like the police in *Mindala*, Township police were capable of correcting or reducing the problem on

4. We do not intend to indicate that one hour and 40 minutes' advance knowledge of a dangerous situation always constitutes sufficient notice to create a duty on the part of a local government body to eliminate or reduce the known danger through remedial measures. The adequacy of notice must be determined under the particular circumstances of each case. Here, Township police were reasonably able to respond to the involved types of danger within one hour and 40 minutes after having been apprised of the dangerous highway conditions. Therefore, Township owed a duty of care to Claimants in this instance.

Route 118 with a minimal use of manpower and resources (here, flares, warning lights on police patrol cars, warning lights on other emergency vehicles at the accident scene).

In *Mindala*, the Pennsylvania supreme court held that a reasonable exercise of a township's authority to use police officers to regulate traffic pursuant to 75 Pa.C.S. § 6109 would fulfill the common-law duty of a township to protect motorists from a known dangerous highway condition, i.e., the lack of a stop sign where two state-designated highways intersected in the township's physical boundaries. The supreme court listed several examples of acts that, under the facts of *Mindala*, would have qualified as a reasonable exercise of the township's authority to regulate traffic in order to protect motorists from the known highway danger: the utilization of the township's portable stop sign, the activation of warning devices on a police patrol car positioned at the intersection, the dispatching of township police officers to direct traffic at the intersection, the summoning of help from the nearby state police barracks. Inasmuch as the township police in *Mindala* did not attempt any corrective measures to protect motorists from the known highway danger, the supreme court held that the township police in *Mindala* had breached their common-law duty to regulate traffic by the use of police officers. *Accord Socarras*.

Regarding Township's fulfillment or breach of its common-law duty to Claimants on February 3, 1984, the following scenario in the present case is pertinent. At approximately 9:00 p.m. on February 3, 1984, Route 118 in Township's boundaries was the scene of an accident that did not involve Claimants (the earlier accident). R. 127a–131a, 149–152a. At approximately 10:05 p.m. on February 3, Township police were notified of the earlier accident's occurrence. R. 30a. By approximately 10:15 p.m., Township police arrived at the scene of the earlier accident. R. 64a. To warn approaching motorists of danger on Route 118, Township police placed flares along Route 118 on either side of the earlier accident scene, R. 42a–45a and 65a, and used the

flashing emergency lights on their patrol car to warn approaching motorists of danger. R. 41a. Additionally, other emergency vehicles (two ambulances, two fire police vehicles, and a tow truck) at the earlier accident scene operated their flashing emergency lights. R. 38a–41a. Two flood lights mounted on telescoping poles and tripods were also used to illuminate the scene of the earlier accident. R. 51a. At 11:45 p.m., Claimants' accident occurred at the scene of the earlier accident on Route 118. R. 36a.

█ Comparing the facts in *Mindala* with the factual allegations in the present case, we conclude that Claimants have not established that Township breached its common-law duty to Claimants to regulate traffic on Route 118 on February 3, 1984, by the use of police officers and the reasonable means at their disposal. The significant difference between *Mindala* and the present case is that, whereas the police in *Mindala* had 24 hours' advance notice of a dangerous highway condition and failed to take any remedial measures to protect motorists, Township police had merely one hour and 40 minutes' advance notice [5] of the dangerous Route 118 conditions and took several remedial measures to protect motorists.

Given the very limited (one hour and 40 minutes) notice which Township police had of the dangerous condition of Route 118 on February 3, 1984, Township's use of flares and flashing emergency lights on police and other emergency vehicles constituted a reasonable exercise of Township's authority to regulate traffic in order to protect motorists from the known highway danger and thus fulfilled Township's common-law duty to Claimants. For this reason, we further hold that Township was entitled to summary judgment as a matter of law under 42 Pa.C.S. § 8542(a)(1) inasmuch as Claimants failed to make sufficient factual averments to establish Township's negligence in regulating

5. Only one hour and 40 minutes elapsed between the 10:05 p.m. notice to Township police of the earlier accident on Route 118 and the 11:45 p.m. occurrence of the Claimants' accident on Route 118 at the scene of the earlier accident.

traffic on Route 118 by the use of police and the reasonable means at their disposal.[6]

Because Claimants' factual allegations have been insufficient to establish any cause of action in negligence against Township, liability cannot be imposed on Township under the governmental immunity exception at 42 Pa.C.S. § 8542(b)(4). *Mindala;* 42 Pa.C.S. § 8542(a).

### III. Leave to Amend Complaint

Claimants maintain that the trial court abused its discretion by refusing to grant them leave to amend their complaint in order to "specifically allege a 'dangerous condition of traffic controls' if such language was essential to set forth a cause of action against Ross Township Police Department." Claimants' Appellate Brief at 22; Claimants' Motion for Trial Court Reconsideration, para. 7, at R. 182a.

Relying on *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600 (1983), Claimants assert that, when a party is merely attempting to amplify allegations contained in its original pleadings, amendment of a complaint should be liberally allowed so that the party may fully develop its theories. *Accord Bendas.*

■ Because we have held that Township lacked a duty to erect traffic-control devices on state-designated highway Route 118 and that Township's February 3, 1984 use of flares on Route 118 did not constitute an erection of traffic-control devices on Route 118, it is obvious that the proposed amendment of Claimants' complaint would not state a cause of action in negligence against Township. *Garrett.* Consequently, we conclude that the trial court did not abuse its discretion by denying Claimants leave to amend their complaint. *See Connor.*

Accordingly, because we have determined that the trial court properly entered summary judgment in favor of

6. We note that police regulation of traffic does not fall within the acts encompassed by the governmental immunity exception at 42 Pa.C.S. § 8542(b)(4). Subsection 8542(b)(4) pertains solely to a local government body's care, custody or control of "trees, traffic signs, lights or other traffic controls, street lights or street lighting systems." *Id.*

Township, we affirm the trial court's order of September 25, 1990.

### ORDER

AND NOW, April 13, 1992, the September 25, 1990 order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby affirmed.

McGINLEY, Judge, dissenting.

I respectfully dissent. The majority concludes that a "flare" is not an official traffic-control device. I believe that such a conclusion is based on too narrow an interpretation and is unsupported by the Vehicle Code and the facts of the present case. The term "official traffic-control devices" is defined in section 102 of the Vehicle Code, 75 Pa.C.S. § 102 and also in the Department of Transportation regulation at 67 Pa.Code § 211.1 as "devices not inconsistent with this title *placed or erected* by authority of a public body or *official having jurisdiction,* for the purpose of *regulating, warning or guiding traffic.*" (Emphasis added.) 67 Pa.Code § 167.3 describes "flares" as a liquid burning warning device. In the present controversy there is no question that the Ross Township Police Department (Ross Police) placed flares at the accident site for the purpose of regulating and warning traffic of a prior accident and icy road conditions. I believe that "flares" are traffic-control devices and were used as such in the present case.

Also, I believe that the facts in *Mindala v. American Motors Corp.,* 518 Pa. 350, 543 A.2d 520 (1988)[1] are distinguishable from the facts in the present case. In *Mindala,* Thomas Mindala, his wife, Vickie Lee, and their daughter, Tracy, had been travelling west on Indiantown Road, a state highway when their vehicle collided with another vehicle travelling south on Schoeneck Road, also a state

---

1. In *Mindala* an evenly divided Supreme Court (three-three) affirmed our decision in *Mindala v. American Motors Corp.,* 90 Pa.Commonwealth Ct. 366, 495 A.2d 644 (1985).

highway, resulting in the deaths of Thomas and Vickie Lee and serious injury to Tracy. The stop sign controlling traffic travelling west on Indiantown Road was not in place at the time of the accident. No stop sign controlling traffic on Schoeneck Road had been erected. Prior to the accident the Chief of Police of West Cocalico Township (Township) had been notified of the missing stop sign. After the Chief had investigated the report and was unable to locate the stop sign he failed to erect a temporary sign or implement any steps to warn motorists of the dangerous condition. The Township had not erected, maintained or serviced the missing stop sign prior to the accident.

On appeal the Supreme Court stated:

It is clear that the Township police chief had no absolute duty to act in this matter, for the authority to act under § 6109 does not necessarily create such a duty. However, under these particular facts, the Township police chief had a duty to act and breached that duty.

*Id.*, 518 Pa. at 361, 543 A.2d at 526. However, the Supreme Court concluded that because the stop sign had not been under the care, custody or control of the Township Section 8542(b)(4) did not apply.

In the present controversy there was a working agreement with the Pennsylvania State Police whereby the Ross Police were to respond to accidents occurring on Route 118, within Ross Township limits from 5:00 P.M. to 6:00 A.M.[2]

2. Attorney Nicholas S. Mattise to Chief John Houssock:
Q. Who generally supplies the police service to that area, the area of the accident scene?
A. It's within the jurisdiction of Ross Township and Pennsylvania State Police, and it's covered primarily by the sub-station of Shickshinny, State Police Sub–Station, Shickshinny.
Q. Do you commonly respond—Ross Township commonly responds to accidents on Route 118 within their limits?
A. Yes.
....
Q. Do the State Police only respond if Ross township requests them?
A. State Police respond ... Ross Township aren't avail ... we are an entirely part-time department. Myself and my patrolmen work during the day, normal hours, so anything that comes in, any calls

Unlike the police chief and the Township in *Mindala* the Ross Police exercised care, custody and control of the accident site and traffic on the highway. The complaint contains allegations raising factual questions concerning whether the Ross Police negligently created a dangerous condition and therefore summary judgment is inappropriate.

I would reverse the decision of the common pleas court and remand the matter for further proceedings.

or police are needed between the hours of six in the morning and five at night, the State Police usually, would normally take charge of that.

Q. How about after five at night?
A. Then the Ross Township Police.
....
Q. Is there any agreement or understanding that—or regulations or rules that after five o'clock, it's Ross Township and before that, it's State Police?
A. There's no document agreement.
Q. That's just the way things normally go?
A. Yes.
Q. Has that been the case since you started working as a police officer for Ross Township?
A. Been the case since I've been Chief of Police.
Deposition of John Houssock, May 27, 1987, at 63–66; Reproduced Record at 84a–86a.