**ASSOCIATION OF CATHOLIC TEACHERS LOCAL 1776, Margaret J. Doyle and Brian Fagan**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD and Norwood–Fontbonne Academy.**

**Appeal of NORWOOD–FONTBONNE ACADEMY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1995.

Decided Feb. 26, 1996.

---

Philip J. Murren, for Appellant, Norwood–Fontbonne Academy.

Samuel L. Spear, for Appellees.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

The Norwood–Fontbonne Academy (the Academy), a private Catholic elementary and secondary school, appeals from an order of the Court of Common Pleas of Philadelphia County which determined that two of its lay teachers, Brian Fagan and Margaret J. Doyle, were covered employes under the Public Employe Relations Act (PERA)[1] and further found that the Pennsylvania Labor Relations Board (PLRB) had jurisdiction to consider a petition by the Association of Catholic Teachers, Local 1776 (the Association), requesting that it be certified as the representative of the Academy's lay teachers, as well as a separate petition alleging that the Academy had engaged in unfair labor practices when it furloughed the two lay teachers.

The Academy is operated by the religious order of the Sisters of St. Joseph in Chestnut Hill, Philadelphia. In addition to those members of its faculty who belong to the Sisters of St. Joseph, or who have similarly dedicated themselves to the religious life, the Academy employs a substantial number of lay teachers.

On June 9, 1993, the Association filed a petition with the PLRB in which it alleged that thirty percent of the Academy's lay teachers wished the Association to represent them and that an election should therefore be held pursuant to Section 603 of PERA, 43 P.S. § 1101.603. Subsequently, on June 18, 1993, the Association filed another petition, on behalf of Fagan and Doyle, in which it alleged that the Academy had engaged in unfair labor practices in violation of Section 1201(a) of PERA, 43 P.S. § 1101.1201. Specifically, the Association alleged that the Academy had terminated the employment of Fagan and Doyle, effective at the end of the 1992–1993 school year, because of their efforts to organize a union at the Academy.

The Secretary of the PLRB dismissed the petitions on the grounds that the PLRB lacked jurisdiction to review the merits of these claims because the Academy was not a "public employer" and because the lay teachers were not "public employes" for the purposes of Section 301 of PERA, 43 P.S. § 1101.301. The Association filed exceptions to the Secretary's decision. However, by a final order dated April 19, 1994, the PLRB dismissed the exceptions and affirmed the decision of the Secretary denying the Association and the discharged teachers a hearing. In reaching this result, the PLRB did not address the question of whether the Academy was a "public employer" under PERA, but instead based its decision solely on its conclusion that the Academy's lay teachers

1. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

were not "public employes" as defined in Section 301 of PERA.[2]

The decision of the PLRB focused on whether the lay teachers qualified as "employes ... at ... facilities when utilized primarily for religious purposes," and were therefore exempt from the requirements of PERA. 43 P.S. § 1101.301(2). The PLRB, utilizing an institutional approach, concluded that "the inquiry in this regard is whether or not the facilities, not the employes, are primarily utilized for religious purposes.... Even though the employes at issue in these cases are lay teachers and librarians, they too, in their duties in carrying out the religious and educational mission of the school, are being used for primarily a religious purpose." (PLRB Opinion at 3–4.)

The Association, Fagan and Doyle appealed the PLRB's decision to the court of common pleas. In a decision dated June 20, 1995, the Philadelphia County Court of Common Pleas reversed the determination of the PLRB and remanded the case for a hearing on the merits. The trial court found that the PLRB's analysis of the term "public em-

ployes" was flawed and that the PLRB failed to provide a reasoned explanation for its decision in light of one of its own prior decisions which reached a contrary result.[3] The trial court further found that in determining whether an employe was exempted from coverage under PERA, it is necessary to focus on what each individual employe actually does rather than the overriding purpose of the facility as a whole. Focusing its analysis on the individual employes of the Academy, rather than the institution as was done by the PLRB, the trial court concluded that the teachers were "public employes" under PERA and that the PLRB had jurisdiction to hear their petitions as well as the petition of the Association.

The Academy filed a petition with this Court requesting permission to appeal the interlocutory order[4] of the court of common pleas.[5] By an order dated August 22, 1995, we granted the Academy permission to pursue an interlocutory appeal before this Court.

■ The sole issue before us is whether the lay teachers and librarians employed at the Academy are "public employes" within

---

2. Besides arguing before the PLRB that the teachers were not "public employes" and that the Academy was not a "public employer" under PERA, the Academy made the following three arguments against the PLRB exercising jurisdiction in this case: (1) since PERA does not affirmatively and definitively cover the Academy's employes within its definitional section, the PLRB does not have jurisdiction under the standard enunciated by the United States Supreme Court in *National Labor Relations Board v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979); (2) application of PERA to the Academy would violate the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution; and (3) application of PERA to the Academy would violate the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb–2000bb–4. The PLRB never reached these issues, but instead based its decision on the narrow question of the meaning of "public employes" under Section 301(2) of PERA.

3. The PLRB relied upon its decision in *Pennsylvania Labor Relations Board v. Faith Tabernacle School*, 14 Pa.Pub.Employes Rep. ¶ 14258 (1983), which similarly held that the PLRB lacked jurisdiction to hear a claim by teachers who worked for a school whose facilities were "utilized primarily for religious purposes." The trial court, on the other hand, found that the

PLRB in *Matter of the Employees of the Archdiocese of Philadelphia Elementary School System*, Case No. PERA–R–91–E (1972), had reached an opposite conclusion. The trial court found that the PLRB's failure to recognize its own precedent, or provide any reason for departing from its own precedent, when deciding *Faith Tabernacle* or the present case, amounted to "institutional amnesia" which warranted reversing its decision.

4. The court of common pleas, pursuant to Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b), certified that this case involves a "controlling question of law as to which there is substantial ground for difference of opinion" and that an immediate appeal would advance the resolution of the matter.

5. Initially, the PLRB also appealed the decision of the court of common pleas to this Court. The court of common pleas had previously dismissed the PLRB as a party in this case; the trial court found that the PLRB lacked standing since it had acted in its adjudicatory capacity and was thus not a true party to the present action. The PLRB appealed both that decision and the decision on the merits to this Court. However, the PLRB has subsequently withdrawn both of its appeals and is no longer a party in the present action. Therefore, the issue of the PLRB's standing is not before this Court in this case.

the meaning of Section 301(2) of PERA, 43 P.S. § 1101.301(2). For the reasons explained below, we reverse the decision of the court of common pleas and hold that the teachers employed by the Academy are not "public employes" who fall under the protection of PERA.

The Academy argues that the court of common pleas erred in relying on the PLRB's 1972 decision in *Matter of the Employees of the Archdiocese of Philadelphia* in finding that the PLRB did have jurisdiction. We agree and take particular note that the United States Supreme Court's decision in *National Labor Relations Board v. Catholic Bishop of Chicago,* this Court's decision in *Christian School Association of Greater Harrisburg v. Department of Labor and Industry,* 55 Pa.Cmwlth. 555, 423 A.2d 1340 (1980), and the PLRB's own decision in *Faith Tabernacle School* in 1983,[6] have all been handed down since 1972 and have superseded the PLRB's earlier decision in *Archdiocese of Philadelphia.* In addition, the PLRB in its opinion in the present case cited to all three of these post–1972 decisions. *See* PLRB Opinion at 4 n. 1. Such an approach, which acknowledges these decisions and follows their precedential authority, is not "institutional amnesia." Accordingly, we agree with the Academy that the trial court committed error by not recognizing this later authority and therefore hold that the PLRB did not ignore its own precedent, but instead provided sound reasons for deciding not to accept jurisdiction.

Nevertheless, since the present case involves a pure question of law, we are obliged to conduct our own statutory analysis to determine whether the PLRB correctly concluded that the Academy's teachers were excluded from the definition of "public employes" under PERA. Section 301(2) of PERA states in pertinent part:

"Public employe" or "employe" means any individual employed by a public em-

ployer [7] *but shall not include* ... clergymen or other persons in a religious profession, *employes or personnel at church offices or facilities when utilized primarily for religious purposes....*

43 P.S. § 1101.301 (third and fourth emphasis added). The Academy argues that it is exempt under Section 301(2) of PERA since it is a *facility* which is used primarily for religious purposes. The Association does not dispute that the Academy as a whole is operated primarily for religious purposes. Instead, the Association and the discharged teachers contend that the words "when utilized primarily for religious purposes" do not modify "facility," but rather refer to the term "employes or personnel." Under this approach, the Association argues that the teachers are not exempt since they, in their individual capacities, serve primarily an educational, rather than a religious function.

While we acknowledge that the language in question is not a model of clarity, it would be most unusual to statutorily describe an *individual's* actions as "utilized" for anything. Furthermore, we believe any doubt as to the correct interpretation of the statute must be resolved in favor of the Academy and against the Association. In *Catholic Bishop of Chicago,* the United States Supreme Court ruled that the National Labor Relations Board (NLRB) did not have jurisdiction over lay faculty members who taught at Catholic parochial high schools in the Chicago Archdiocese. Although the statute involved in that case was not identical to PERA, we find the Supreme Court's reasoning in that case to be highly persuasive and believe that its approach to statutory construction should be followed here.

■ In *Catholic Bishop of Chicago,* the Supreme Court stated that as a matter of statutory construction it would not presume that Congress intended the NLRB to have

---

6. No appeal to the court of common pleas or to this Court was taken in *Faith Tabernacle School.*

7. Section 301(1) of PERA defines "public employer" as:

the Commonwealth of Pennsylvania, its political subdivisions including school districts and

any officer, board, commission, agency, authority, or other instrumentality thereof and *any nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health educational or welfare institution receiving grants or appropriations from local, State or Federal governments....*
43 P.S. § 1101.301 (emphasis added).

jurisdiction absent a clear and affirmative expression by Congress to do so. It is a well established principle that statutes should be construed in a manner which avoids unnecessary Constitutional decisions. *Id.* The Supreme Court found that there exists a "significant risk that the First Amendment will be infringed" when the government becomes involved in the labor disputes of religious educational institutions. *Catholic Bishop of Chicago,* 440 U.S. at 502, 99 S.Ct. at 1319. Since conferring jurisdiction on the NLRB would have raised serious Constitutional questions regarding the free exercise and establishment clauses under the First Amendment, the Supreme Court construed the National Labor Relations Act narrowly so as to avoid even the possibility of an excessive entanglement with religion which would create a conflict between the statute and the First Amendment. *Id.*

This Court, in *Christian School Association,* followed the Supreme Court's reasoning in *Catholic Bishop of Chicago* and found that religious schools were not covered by Pennsylvania's unemployment compensation laws. The statutory language in question in *Christian School Association,* similar to the language in PERA at issue in the present case, exempted from coverage under the unemployment law "[s]ervice performed in the employ of ... an organization which is *operated primarily for religious purposes."* Section 4(*l*)(4)(8)(a) of the Unemployment Compensation Law, Act of December 5, 1936 Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 753(*l*)(4)(8)(a) (emphasis added). We stated that "the imposition of the Pennsylvania [Unemployment] Law ... would present a substantial risk of infringement upon the schools' first amendment rights" and would be contrary to the holding in *Catholic Bishop of Chicago* which "requires a 'clear expression of an affirmative intention' by the legislature" before such a law may be applied to a religious school. *Christian School Association,* 423 A.2d at 1345.

In accordance with our reasoning in *Christian School Association* and the Supreme Court's decision in *Catholic Bishop of Chicago,* we find that the Academy's lay teachers are not covered under PERA since the legislature did not demonstrate a clear intent to have the law apply to employes of religious schools. Instead, we construe the language "utilized primarily for religious purposes" found in Section 301(2) of PERA as applying to the term "facilities," rather than "employes." Since the Academy is a "facility" used primarily for a religious purpose, we hold that its teachers are exempted from coverage under PERA. Given the close similarity between the subject matter of *Catholic Bishop of Chicago* and the present case, we believe that our decision today in favor of the Academy on the issue of jurisdiction under PERA is supported by prior precedent to an even greater extent than *Christian School Association* was when it was decided.

Accordingly, we hold that the PLRB does not have jurisdiction in this case and thereby reverse the decision of the Court of Common Pleas of Philadelphia County.

### ORDER

NOW, February 26, 1996, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed.