**Paul T. PETTINEO, Appellant,**

v.

**CITY OF PHILADELPHIA LAW
DEPARTMENT–CLAIMS
DIVISION.**

Commonwealth Court of Pennsylvania.

Argued May 4, 1998.
Decided Nov. 4, 1998.
Reargument Denied Dec. 23, 1998.

Michael A. Ruggieri, Philadelphia, for appellant.

Alan C. Ostrow, Philadelphia, for appellee.

Before PELLEGRINI and FLAHERTY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Paul Pettineo appeals an order of the Philadelphia Common Pleas Court granting the City of Philadelphia's (City) post-trial motion for judgment *non obstante veredicto* and entering judgment in favor of the City.

The facts in this case are not in dispute. On January 1, 1994, City police officers tied yellow nylon ropes between trees and signposts on Broad Street in the City to prevent pedestrians and cars from crossing the street during the 1994 Mummer's Day Parade. At approximately 6:00 a.m., Pettineo, responding to his car alarm and seeing that his vehicle was about to be towed away, ran out of his house and was "clotheslined," i.e., caught about the neck and knocked to the ground by a length of the police rope placed along the sidewalk at 1807 South Broad Street. As a result, Pettineo suffered a separated right shoulder, a severe rope burn on his neck and other bodily injuries.[1]

---

1. Medical testimony presented at trial concluded that Pettineo required physical therapy and was totally disabled from his job as a stock clerk for Acme Markets for four months, and that he had a 10% permanent loss of motion in his right shoulder and developed traumatic arthritis, which is a permanent condition.

Pettineo brought a civil action against the City seeking damages for the injuries he sustained as a result of the accident. He contended that the City was liable and not immune to suit because the rope was a "traffic control" within an exception to the general grant of immunity given to the Commonwealth's political subdivisions by what is commonly referred to as the "Political Subdivision Tort Claims Act" (Act).[2]

Section 8541 of that Act generally cloaks the Commonwealth's local agencies, including its political subdivision such as the City, in immunity from tort damages

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

Section 8542(b) enumerates the exceptions provided, one of which, found at subsection (b)(4), Pettineo invoked in bringing his action against the City:

> (4) *Trees, traffic controls and street lighting.*—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

In its answer to Pettineo's complaint, the City contended that it was immune from suit and raised the defense of governmental immunity under Section 8541 of the Act. The case was submitted to a panel of arbitrators, which ruled in favor of Pettineo, awarding him $20,000.00, reduced by 33 and 1/3% ($6,666.00) for his comparative negligence, for a total recovery of $13,334.00. The City

appealed the award and requested a trial *de novo*.

Prior to trial, the City filed a motion for summary judgment, again contending that it was immune from suit under the Act because the rope was not a traffic control device, as contended by Pettineo, within the meaning of Section 8542(b)(4) of the Act. Without issuing an opinion, the Motion Court Judge denied the City's motion and the case went to trial. At the close of Pettineo's case in chief, the City filed a motion for non-suit, which was denied by the trial court. The City subsequently filed a motion for directed verdict at the conclusion of all the testimony, but the trial court denied that motion as well. The jury then returned a verdict in Pettineo's favor in the amount of $108,731.00 for medical bills and/or lost wages, permanent loss of bodily function and pain and suffering. Pettineo moved for delay damages of $4,628.40. The City then filed a motion for judgment *n.o.v.* contending, among other things, that the trial court erred in not granting its motion for non-suit and directed verdict grounded on its immunity because the yellow safety rope was not a traffic control device.

The trial court granted the City's motion for post-trial relief, holding that the rope was not a "traffic control device" so that the City's negligence did not fall within the "traffic control" exception to governmental immunity under Section 8542(b)(4) of the Act. The court applied the definitions of "official traffic-control device" and "traffic-control signal" found in Section 102 of the Vehicle Code, 75 Pa.C.S. § 102. In its opinion, the court stated that, "it can hardly be asserted that a rope, which has a primary purpose of separating pedestrian traffic from a parade route, would qualify as a 'traffic control' device. A rope neither electronically, mechanically, nor manually provides pedestrian nor motorists with a directive." Thus the court concluded that the yellow safety rope place by police to prevent pedestrian and vehicular traffic did not qualify as a "traffic control" as it was meant by Section 8542(b)(4) of the Act. Pettineo then filed this appeal.[3]

---

**2.** Act of October 5, 1980, P.L. 693, *as amended,* 42 Pa.C.S. §§ 8541 and 8542.

**3.** Our scope of review of an order granting *judgment n.o.v.* is limited to a determination of whether the trial court abused its discretion or

The central issue in this appeal is whether the rope placed along the sidewalk of Broad Street to control the crowd for a parade is a "traffic control" as that term is used in the Act's exception to immunity. As a threshold matter, Pettineo asserts, that determination is factual and therefore for the factfinder to decide. Because the jury found that the rope was a traffic control device, Pettineo argues that the trial court erred in granting the City's post-trial motion for judgment *n.o.v.* since it could not disturb this factual determination of the jury.

■■■ However, where a statutory term is *without express definition, ambiguous or must be defined, the definition of that term is a question of law within the province of the judge.*[4] Because there is no fact in dispute, the only issue is the definition of "traffic control" and whether the rope in this instance falls within that definition, which is a question of law.

■■■ Even if it is a question of law, Pettineo contends that the rope falls within the definition of a "traffic control" as provided for in the Act's exception. Here, Pettineo contends, since the City placed the rope to prevent pedestrians and vehicles from crossing Broad Street into the parade route, and because pedestrians are included in the definition of "traffic" in Section 102 of the Vehicle Code, 75 Pa.C.S. § 102, the rope is a traffic control.

As the trial court recognized, Section 8542(b)(4) of the Act does not define the term "traffic control." Instead, as the trial court *also recognized, the courts have looked to* Section 102 of the Vehicle Code, the definitional section, for aid in defining that term. *See Slough v. City of Philadelphia,* 686 A.2d 62 (Pa.Cmwlth.1996). The pertinent definitions found in Section 102 are:

**"Official traffic-control devices."** Signs, signals, markings and devices not inconsistent with this title placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating warning or guiding traffic.

**"Pedestrian."** A natural person afoot.

**"Traffic."** Pedestrians, ridden or herded animals, vehicles, streetcars and other conveyances, whether singly or together, using any highway for purposes of travel.

**"Traffic-control signal."** A device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed.

It is apparent from these definitions that traffic control can be accomplished by means other than "traffic-control signals," which, by definition of the Vehicle Code, are devices manually, electrically or mechanically operated to direct traffic alternately to stop and proceed. The Code contemplates that "traffic control devices" will also be used. "Traffic control devices" are signs, signals markings and devices officially placed *for the purpose of regulating, warning or guiding* traffic. It is also apparent that "traffic" means pedestrians as well as conveyances.

The exception to immunity found at Section 8542(b)(4) of the Act speaks neither of

committed an error of law pertinent to the outcome of the case. *Krevitz v. City of Philadelphia,* 167 Pa.Cmwlth. 412, 648 A.2d 353 (Pa.Cmwlth. 1994). A grant of *judgment n.o.v.* is warranted only where it is clear that the facts are such that no two reasonable persons could fail to agree that the verdict was incorrect. *Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003 (1992).

4. *See e.g. Beardsley v. State Employees' Retirement Board,* 691 A.2d 1016 (Pa.Cmwlth.1997) (whether payment is "bonus" under Pennsylvania State Employees' Retirement Code is question of law); *Association of Catholic Teachers Local 1776 v. Pennsylvania Labor Relations Board,* 671 A.2d 1207 (Pa.Cmwlth.1996) (whether private lay teachers are "public employees" under Public Employe Relations Act is a question of law); *Sipe*

*v. Snyder,* 163 Pa.Cmwlth. 232, 640 A.2d 1374 (Pa.Cmwlth.1994) (whether DPW nursing home settlement and appeal activity reports are "public records" under Right–to–Know Act is a question of law); *Wilson v. Ridgway Area School District,* 141 Pa.Cmwlth. 607, 596 A.2d 1161 (Pa.Cmwlth. 1991) (whether table saw is "personality" or "realty" under school district's manifest conduct is a question of law: *Society Hill Carriage Company v. Pennsylvania Public Utility Commission,* 135 Pa.Cmwlth. 538, 581 A.2d 702 (Pa.Cmwlth. 1990))(what constitutes a "common carrier" under Public Utility Commission's policy statement is a question of law); *City of Pittsburgh v. Tucker,* 74 Pa.Cmwlth. 290, 459 A.2d 1333 (Pa.Cmwlth. 1983) (what constitutes "manufacturing" under Local Tax Enabling Act is a question of law).

"signals" nor "devices," but only of "traffic controls." Here, it is undisputed that city police officers tied yellow nylon ropes between trees and signs adjacent to Broad Street to prevent pedestrians and cars—that is, "traffic,"—from crossing Broad Street. To prevent pedestrians from movement into an area is to control them by any definition of the term. Thus, if the jury found that the City created a dangerous condition by some act of negligence in placing the yellow nylon rope along the length of Broad Street, it rightly found a dangerous condition of a "traffic control," or, for that matter, of a "traffic control device," which, as noted, is a marking or device officially placed "for . . . regulating, warning, or guiding traffic." Under the facts of this case, judgment *n.o.v.* should not have been granted, since the jury verdict was squarely consistent with the statutory terms creating an exception to the City's immunity.

Moreover, that verdict was not inconsistent with the case law interpreting this statutory exception. We have held that it applies to inanimate objects only. *Robinson v. City of Philadelphia,* 666 A.2d 1141 (Pa.Cmwlth. 1995) (citing *Miseo v. Ross Township Police Department,* 147 Pa.Cmwlth. 263, 607 A.2d 806 (Pa.Cmwlth.1992)). The yellow safety rope is, of course, inanimate. We have held that highway flares were not traffic control *devices* because they are not signs, signals or markings as those terms are defined in Department of Transportation (DOT) regulations, and because "one cannot obey the instructions of a flare inasmuch as a flare does not specify any particular action a driver must perform." *Miseo,* 607 A.2d at 810 (McGinley, J. dissenting). Rope, on the other hand, fits aptly into the regulatory definition of "marking" as a "device . . . set into the surface of, applied upon, or *attached to the pavement or curbing or to objects within or adjacent to the roadway." Id.*

What is more, even without reference to the regulatory definitions of "traffic control device," [5] a rope used as it was here is a "control" on "traffic." One could hardly ignore the obvious purpose of a rope, specially colored and strung between two objects, to specify the particular action not to enter or cross the restricted area. Thus, the jury's implicit finding that the rope was a "traffic control" was not inconsistent with *Miseo.* Further, the yellow nylon police rope is unlike a bus stop, inasmuch as it actively functioned to restrict the flow and movement of all traffic, and one could presumably be prosecuted under Section 3111 of the Vehicle Code, 75 Pa.C.S. § 3111, for disregarding it and entering into the parade route without authorization. Thus, the jury's decision was not in conflict with *Garrett by Garrett v. Moyston,* 127 Pa.Cmwlth. 488, 562 A.2d 386 (Pa.Cmwlth.1989). Nor was it in conflict with *Aberant v. Wilkes–Barre School District,* 89 Pa.Cmwlth. 516, 492 A.2d 1186 (Pa. Cmwlth.1985), in which we held a school bus with lights flashing was not a "traffic control device." We stated that a school bus could not be characterized as a device and noted that "school bus" was given a distinct and specific definition of its own in Section 102 of Vehicle Code.

While it is true that in *Slough* we said, relying on *Garrett, Miseo* and *Aberant,* that a highway median was a traffic control device "only in the broadest sense of that term," *Id.* 686 A.2d at 65, the negligently placed rope alleged to have caused the injury here did much more than "separate or 'channellize' lanes of travel." *Id.* The rope was placed to *prevent* travel altogether onto Broad Street and thus controlled traffic in a wholly different manner and to a far greater degree.

Thus, we hold it was error to grant the City's post-trial motion for judgment *n.o.v.* because the jury's verdict was not clearly incorrect as a matter of law. Accordingly, we will reverse the trial court's decision.

### ORDER

AND NOW, this 4th day of November, 1998, the order of the Philadelphia Court of Common Pleas at No. 2916 December Term 1995, dated August 1, 1997, is reversed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The yellow nylon rope tied between trees and signs to prevent

---

**5.** The DOT regulation defining "markings" is found at 67 Pa.Code § 211.1.

access to Broad Street being prepared for the 1994 Mummer's Day Parade was not a traffic control device but a crowd control device and, accordingly, does not fall within the traffic control exception to governmental immunity. 42 Pa.C.S. § 8542(b)(4).[1] In addition, I believe the majority opinion is at variance with numerous decisions of this court.

At approximately 6:00 a.m., on January 1, 1994, Paul T. Pettineo (Pettineo), responding to his car alarm and seeing that his vehicle was about to be towed away, ran out of his house and was "clotheslined", i.e., was caught about the neck and knocked to the ground by a portion of yellow nylon rope placed on the sidewalk adjacent to 1807 South Broad Street. City of Philadelphia (City) police officers had tied the rope between trees and signs adjacent to that portion of Broad Street to prevent anyone in the crowd that was observing the 1994 Mummer's Day Parade from crossing the parade route at that point.

The majority reverses the trial court's grant of the City's motion for *judgment n.o.v.* because the rope was erected to control "pedestrians" under Section 102 of the Vehicle Code, 75 Pa.C.S. § 102, making the rope a "traffic control device." The relevant definitions provided in Section 102 are as follows:

> **"Official traffic-control devices."** Signs, signals, markings and devices not inconsistent with this title placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating warning or guiding traffic.
>
> **"Pedestrian."** A natural person afoot [i.e., travelling on foot].
>
> **"Traffic."** Pedestrians, ridden or herded animals, vehicles, streetcars and other conveyances, whether singly or together, using any highway for purposes of travel.

**"Traffic-control signal."** A device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed. (Emphasis in original).

Because the yellow rope in question controls pedestrians and pedestrians fall within the definition of traffic, the majority then concludes that the yellow rope must necessarily be a traffic control device. Under the majority's interpretation of those provisions, the velvet ropes hung on stanchions at municipally-owned museums to control patrons when looking at works of art are traffic control devices as well.

While the above example is extreme, it illustrates that a traffic control device is a device that is used to regulate, warn or guide traffic on "any highway for purposes of travel", not just to control people. 75 Pa.C.S. § 102. The yellow rope did not act to facilitate the highway for purposes of travel because it was not placed to act as a "traffic control signal" to control vehicles or pedestrians because Broad Street was closed. When a street is used for a parade, it is the antithesis of what is considered travel—the movement of vehicles or pedestrians from one place to another—as anyone who has to drive blocks or miles to outflank a parade knows. The sole purpose of the rope placed by the City was to control the crowd gathered along Broad Street for the 1994 Mummer's Day Parade making the rope a crowd control device, not a traffic control device, and making any use of these definitions improper because they simply do not apply.

In holding that the yellow rope directs traffic and not crowds, the majority then goes on to hold that the yellow rope is a traffic control device because it falls within the definition of "markings" as defined by PennDot's regulations. 67 Pa.Code § 211.1

---

1. This exception provides in relevant part:
   (b) **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: ... *(4) Trees, traffic controls and street lighting.*—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to

recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. (Emphasis in original.)

defines "markings" as "a device ... set into the surface, applied upon, or attached to the pavement or curbing or to objects adjacent to the right-of-way." Because the yellow rope was "attached" to trees and signs along Broad Street, the majority holds that that makes the rope a marking, and if it is a marking, it necessarily is a traffic control device. However, this interpretation ignores that this provision, when defining a marking, uses the language "set into the surface" and "applied upon", envisioning that a marking is something more permanent than a rope. While this provision does use the term "attached ... to objects", when read together with the other terms, it envisions the use of bolts and the like to attach the markings, not some temporary attachment as we have here. This is confirmed by PennDot regulations that delineate acceptable pedestrian traffic controls. *See* 67 Pa.Code 211.271. All of the traffic control devices set forth in that regulation are signs that are affixed by bolts and control the movement of pedestrians in relationship to vehicle traffic, not surprisingly because PennDot's purpose is not to design or approve signs for parades or street fairs.

Moreover, the majority's holding is at variance with other holdings of this court interpreting these provisions to mean permanent types of markings engineered in advance to move traffic and are not *ad hoc* or implemented for a special purpose. For example, a state highway median is not a traffic control device but part of the highway, *see Slough v. City of Philadelphia*, 686 A.2d 62 (Pa.Cmwlth.1996); a police officer directing traffic is not a traffic control device because the exception applies to inanimate objects, *Robinson v. City of Philadelphia*, 666 A.2d 1141 (Pa.Cmwlth.1995); flares placed on the highway to advise of icy conditions are not traffic control devices, *Miseo v. Ross Township Police Department*, 147 Pa.Cmwlth. 263, 607 A.2d 806 (Pa.Cmwlth.1992); a bus stop is not traffic control, *Garrett by Garrett v. Moyston*, 127 Pa.Cmwlth. 488, 562 A.2d 386 (Pa.Cmwlth.1989); and a school bus lights is not a traffic device even though all cars are required to stop when its lights are flashing, *Aberant v. Wilkes–Barre Area School District*, 89 Pa.Cmwlth. 516, 492 A.2d 1186 (Pa. Cmwlth.1985). In view of all these cases that

have held that markings or devices that have an impact on vehicle traffic are not traffic control devices, then neither is a yellow rope to control a crowd at a parade.

Because the rope is not a "traffic control device" under Section 8542(b)(4) of the Act, I would affirm the trial court's granting of the City's post-trial motion for *judgment n.o.v.* Accordingly, I dissent.